### State of Vermont v. James R. Roy

[557 A.2d 884]

No. 87-536

Present: **Allen, C.J., Peck, Dooley and Morse, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed January 13, 1989

*Shelley A. Hill, Windsor County State's Attorney,* and *Ruth E. Clough, Law Clerk (On the Brief),* White River Junction, for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General,* and *William A. Nelson, Appellate Defender,* Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant appeals his conviction of simple assault on a police officer, 13 V.S.A. §§ 1023(a) and 1028, attempting to elude a police officer, 23 V.S.A. § 1133, and reckless operation of an automobile, 23 V.S.A. § 1091. Defendant urges numerous grounds for reversal: (1) that the jury charge was in error because it failed to state that knowledge that the victim was a police officer is an element of the crime of simple assault on a law enforcement officer; (2) that the jury charge was in error because it failed to state that scienter is an element of the crime of eluding a police officer; (3) that the counts of the information alleging these two elements were defective because they did not allege this scienter element;[1] (4) that evidence offered to prove that the alleged victim was the aggressor was erroneously excluded; (5) that the exclusion of a state police personnel file containing potentially relevant and exculpatory materials was in error, and; (6) that the delay between arrest and trial denied him a speedy trial. We reject each of these claims and affirm.

---

[1] The information charged:

COUNT 1: Did, then and there, purposely attempt to cause bodily injury to a law enforcement officer, to wit: Trooper Roderick MacAskill, while he was engaged in a lawful duty, this being his second offense, in violation of 13 V.S.A. § 1023(a)(1), § 9 and § 1028. Penalty of not more than $1,000 fine or not less than two years nor more than ten years imprisonment or both.

COUNT II: Did, then and there, purposely cause bodily injury to a law enforcement officer, to wit: Trooper Rodney A. Hall, while he was engaged in a lawful duty, this being his third offense, in violation of 13 V.S.A. § 1023(a)(1) and 13 V.S.A. § 1028. Penalty of not more than $1000 fine or not less than two years nor more than ten years imprisonment or both.

COUNT III: Was, then and there, an operator of a motor vehicle who failed to bring his vehicle to a stop when signaled to do so by an enforcement officer operating a law enforcement vehicle sounding a siren and displaying a flashing blue lamp, in violation of 23 V.S.A. § 1133. Penalty of not more than six months imprisonment or not more than $500 fine or both.

COUNT IV: Did, then and there, purposely cause bodily injury to a law enforcement officer, to wit: Bruce Messier of the Randolph Police Department, while he was engaged in a lawful duty, this being his second offense, in violation of 13 V.S.A. § 1023(a)(1) and 13 V.S.A. § 1028. Penalty of not more than $1,000 fine or not less than two years nor more than ten years imprisonment or both.

COUNT V: Did, then and there, operate a motor vehicle on a public highway, to wit: Route 12, in willful or wanton disregard for the safety of persons and property, in violation of 23 V.S.A. § 1091(b). Penalty of not more than $1,000 fine or not more than one year imprisonment or both.

Defendant's trouble began on January 26, 1987 when he finished his work for the day, bought a fifth of Jack Daniels, took it home, and, according to his own testimony, drank a bit more than half of it. Defendant then made a questionable decision, given the quantity of whiskey he had consumed, to go to the grocery store. At about 10:00 p.m. a Randolph police officer saw a red pickup (defendant's) going the wrong way on a one-way street in Randolph. The officer followed the truck onto a two-way road and observed that the truck was consistently in the center of the road or completely in the left lane. The officer flashed his driving lights and put on his siren and flashing blue lights in order to signal defendant to pull over. None of these signals produced results. Defendant testified that although he saw the flashing blue light of the police cruiser he did not stop because he was afraid of being picked up for driving under the influence of alcohol.

A state trooper was called into the chase, and he created a roadblock. Defendant ignored the roadblock although he did observe the flashing blue lights of the cruiser at the roadblock. Eventually, defendant's truck was forced off the road by the state police, where it became lodged in a snowbank.

When the officers confronted defendant, he was violent and aggressive. He claims that he was belligerent because of his diminished capacity and that he did not know that he was dealing with police officers and was being arrested. He also claims that one of the officers was the aggressor and he was defending himself against that aggression. The State claims that the testimony shows clearly that defendant knew he was dealing with the police. This factual dispute went to the jury, which found defendant guilty of one count each of assaulting a law enforcement officer, attempting to elude a law enforcement officer, and reckless driving.

## I.

Defendant's first argument is based on the jury charge. The trial court conducted a lengthy and thorough jury charge conference, at which counsel for both sides actively participated. The charge tracked the statutory elements of simple assault and simple assault against a police officer.[2] In addition, the trial judge

---

[2] 13 V.S.A. § 1023(a) provides:
    (a) A person is guilty of simple assault if he:

charged "[a] private citizen may not use force to resist arrest by one he knows, *or has good reason to believe,* is an authorized police officer engaged in the performance of his duties." (Emphasis added). Near the conclusion of the simple assault and assault on a law enforcement officer charge, the judge stated that "[i]n the event the State has not proved each of these elements beyond a reasonable doubt as to counts one and three, then you must find the Defendant not guilty of assault on a law enforcement officer." There was no objection to the charge by defendant.

There was, however, a request for clarification of the charge by the jury. In response to the jury's question "[p]lease explain, again, assault and/or simple assault," the trial court reiterated the elements of each offense. The following colloquy occurred between the trial judge and the jury foreman:

THE COURT:

. . . .

That's the difference between simple assault on the one hand and assault on a law enforcement officer on the other hand. Okay?

FOREPERSON: We're concerned with the part about performing a lawful duty. Would you explain that better?

THE COURT: All right. I can read that to you.

"Performing a lawful duty" means carrying out the duties required by his office in the administration or the execution of the law. A law enforcement officer may arrest a person when the officer has probable cause to believe a crime has been committed in his presence.

. . . .

---

(1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
(2) negligently causes bodily injury to another with a deadly weapon; or
(3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

13 V.S.A. § 1028 provides:
(a) A person convicted of a simple or aggravated assault against a law enforcement officer or fireman while the officer or fireman is performing a lawful duty [is subject to enhanced penalties].

> ... A private citizen may [not] use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties . . . .

Defendant argues that the charge was fatally defective because it omitted an element of the offense found in this Court's decision in *State* v. *Galvin*, 147 Vt. 215, 514 A.2d 705 (1986). In *Galvin*, this Court held that the charge of simple assault on a police officer included as an element that the defendant knew or had good reason to believe that the victim was a law enforcement officer. 147 Vt. at 217-18, 514 A.2d at 707; see also *State* v. *Peters*, 141 Vt. 341, 348, 450 A.2d 332, 336 (1982). Before we analyze this claim in light of the charge that the trial court did give, we must look at the standard of review for such a claim.

As noted above, no objection was made to the charge below. V.R.Cr.P. 30 provides that a party may not assign as error "any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict . . . ." The waiver rule of Criminal Rule 30 is subject to the plain error exception of V.R.Cr.P. 52(b). That rule allows this Court to consider "[p]lain errors or defects affecting substantial rights" even though there was no objection below.

We are first confronted with a claim that the omission of an essential element of the offense from the charge to the jury is automatically plain error warranting reversal. A number of states have adopted a position close to that advocated here. See, e.g., *State* v. *Dana*, 517 A.2d 719 721 (Me. 1986); *Commonwealth* v. *Thomas*, 401 Mass. 109, 117-18, 514 N.E.2d 1309, 1315 (1987). Many of the federal circuit courts of appeal have adopted a similar rule. See, e.g., *United States* v. *Kerley*, 838 F.2d 932, 938 (7th Cir. 1988); *United States* v. *Brown,* 692 F.2d 345, 348 (5th Cir. 1982).

Defendant argues that this Court has already adopted such a standard in *State* v. *Noyes*, 147 Vt. 426, 428, 519 A.2d 1152, 1153 (1986), and *State* v. *Boise*, 146 Vt. 46, 48, 498 A.2d 495, 496 (1985). However, *Boise* and *Noyes* involved circumstances where the trial court informed the jury that an element had been conceded or tacitly admitted by the defendant. A per se rule is justified in such circumstances because the jury is specifically instructed not to consider the element involved. Here, it is possible that other aspects of the charge will cover the omission at least in

part. As the United States Supreme Court pointed out in *Henderson* v. *Kibbe*, 431 U.S. 145, 155 (1977): "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."

█ We also note that when we have examined cases where there is no objection below, we have consistently required a showing of plain error. This Court has not found that some errors are plain per se. Most recently in *State* v. *Duff*, 150 Vt. 329, 554 A.2d 214 (1988), we decided a case where the defendant admitted committing a homicide but argued that he was guilty only of voluntary manslaughter by virtue of diminished capacity. The jury convicted the defendant of murder after the trial judge misdefined the elements of the crime of voluntary manslaughter by adding an element that was not part of the crime. This Court analyzed the charge error under the traditional plain error test although the practical effect of the error was to omit or misdefine an essential element of murder, the crime of which the defendant was convicted.

We believe it would be bad policy to create a category of errors which are plain per se. As the Supreme Court of Rhode Island noted recently in response to a similar argument, such a rule would apply its analogue to V.R.Cr.P. 52(b) "in such a way as to destroy Rule 30." *State* v. *Williams*, 432 A.2d 667, 670 (R.I. 1981); see also *State* v. *Ballard*, 439 A.2d 1375, 1388-89 (R.I. 1982) (same). Further, such a rule would reduce any incentive for trial counsel to object to errors that involve omissions of essential elements of the crime. Given our clear precedent in *Galvin*, there is no question that the trial court would have corrected the asserted error if it were brought to its attention at the time of the charge. See generally Robinson, *A Proposal for Limiting the Duty of the Trial Judge to Instruct the Jury Sua Sponte*, 11 San Diego L. Rev. 325 (1974).

█ We thus adopt the familiar plain error standard for omissions of elements of the offense from the charge to the jury. In *State* v. *Duff, supra*, we stated this standard as follows:

This is one of those "rare and extraordinary case[s]" . . . where "the error in the trial court's charge so affects the substantial rights of this [defendant] that we will notice the error on appeal despite the lack of proper objection."

*Id.* at 338, 554 A.2d at 219 (quoting *State* v. *D'Amico*, 136 Vt. 153, 157, 385 A.2d 1082, 1085 (1978)); see also *Henderson* v. *Kibbe*, 431 U.S. at 154 ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

In this case, the State argues that the standard for plain error is not met because the jury was apprised of the need for the defendant to know that the victim was a law enforcement officer by the self-defense charge and because the evidence established that defendant in fact knew that the victim was a law enforcement officer. We agree that the evidence is quite strong that defendant knew that the victim was a law enforcement officer. Defendant testified that he was placed "into the police cruiser" where the assault was alleged to have occurred. He further testified that he shouted at the occupants of the cruiser: "What am I being charged with?" Defendant never claimed he did not know that the victim was a law enforcement officer. His defense was that he did not assault the officer or he acted in self-defense.

■ We also agree with the State that the charge on self-defense, repeated at the request of the jury, brought the question of knowledge before the jury although in an inaccurate context. The rule as established by this Court is that when examining jury charges, if the instruction "taken as a whole and not piecemeal, breathes the true spirit of the law, and if there is no fair ground to say that the jury has been misled, then it ought to stand." *State* v. *Gokey*, 136 Vt. 33, 36, 383 A.2d 601, 602 (1978). See *State* v. *Noyes*, 147 Vt. at 428, 519 A.2d at 1153; *State* v. *Dusablon*, 142 Vt. 95, 98, 453 A.2d 79, 81 (1982).

In some ways, this case is similar to *State* v. *Day*, 150 Vt. 119, 549 A.2d 1061 (1988). In *Day,* this Court held that general intent to operate a vehicle without the owner's consent is an element of the crime of operating without the owner's consent. *Id.* at 123, 549 A.2d at 1064. We affirmed the conviction despite the fact that the charge to the jury, over the objection of the defendant, failed to clearly specify this element. We found sufficient language defining "consent" to include "voluntary agreement" and "permission," words that conveyed that the defendant must know or have reason to know that he has the consent of the owner to operate the vehicle. *Id.* While the argument is stronger in *Day* than in this case that the missing element can be inferred from the over-

all language, the defendant objected to the omission in *Day* but failed to do so here.

For the above reasons, we hold that the omission from the charge does not warrant reversal.

## II.

Defendant next contends that a scienter requirement is implicit in 23 V.S.A. § 1133, the offense for which defendant was convicted in Count III of the information. We disagree. The statute makes it an offense to fail to stop a motor "vehicle . . . when signalled to do so by an enforcement officer wearing insignia identifying him as such, or operating a law enforcement vehicle sounding a siren and displaying a flashing blue or blue and white signal lamp . . . ." Defendant argues that an implied element of the crime is that the defendant must have known that he was being signalled to stop by an enforcement officer displaying a flashing light and sounding a siren.

This Court, when interpreting a statute, must look to the interpretation most favorable to the defendant and, at the same time, must avoid interpretations which defeat the purpose of the statute. *State* v. *Cushman*, 133 Vt. 121, 123, 329 A.2d 648, 650 (1974). We have found scienter elements in other statutes where none was expressly written into the statute. See *State* v. *Audette*, 149 Vt. 218, 222, 543 A.2d 1315, 1316 (1988) (kidnapping); *State* v. *Hanson*, 141 Vt. 228, 232, 446 A.2d 372, 374 (1982) (larceny); *State* v. *Peters*, 141 Vt. at 348, 450 A.2d at 336 (assault on a law enforcement officer); *State* v. *Graves*, 140 Vt. 202, 205, 436 A.2d 755, 757 (1981) (uttering false prescription). But see *State* v. *Kerr*, 143 Vt. 597, 604-05, 470 A.2d 670, 674 (1983) (no scienter element in crime of carrying a weapon while committing a felony). We will not, however, create such an element when the statutory language cuts against such a result and the policy behind the statute would be defeated.

In addition to the statutory language, the factors we must look to in order to decide whether the Legislature intended to impose liability on a strict liability basis are: The severity of the punishment; the seriousness of the harm to the public; the defendant's opportunity to ascertain the true facts; the difficulty of prosecution if intent is required; and the number of prosecutions expected. See generally 1 W. LaFave & A. Scott, Substantive Crimi-

nal Law § 3.8(a), at 342-45 (1986). We think those factors support a strict liability construction of the statute before us. The most important reason is the statutory language. Not only did the Legislature fail to include an intent element, it clearly chose elements to this crime as a substitute for intent. Thus, the statute requires that the officer wear the appropriate insignia and the law enforcement vehicle sound a siren and have a flashing signal lamp. Citizens are expected to recognize these signs and respond. It is not left to persons to say that they did not recognize these common indicia of law enforcement authority.

The other factors do not undercut the conclusion drawn from the statutory language. This is a misdemeanor where the elements make the true facts obvious. The Legislature could have been convinced that intent would be hard to prove in the individual case because of the subjective nature of the element.

Defendant relies on cases from other states to argue that the statute requires a showing of intent. Because of the differences in the statutes, that case law actually supports our conclusion. Most states have adopted variations of § 11-103 of the Uniform Vehicle Code adopted by the National Committee on Uniform Traffic Laws and Ordinances. See Traffic Laws Annual § 11-103(c) (1965) (only eight states, including Vermont, have statutes dissimilar to the Uniform Vehicle Code). The Code makes it an offense to "willfully" fail to respond to the direction of a police officer. See Uniform Vehicle Code § 11-103 (1968 & Supp. 1979). All of the cases cited by defendant involve statutes with this element of willfulness. Thus, in *State* v. *Sherman*, 98 Wash. 2d 53, 58, 653 P.2d 612, 616 (1982), the Supreme Court of Washington held that Washington's statute contains a subjective intent element. The statutory language punishes a motorist who "wilfully fails or refuses to immediately bring his vehicle to a stop . . . while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop . . . ." *Id.* at 55, 653 P.2d at 614. After finding that the statute contains both a subjective and objective intent element, the Washington court stated that:

> Generally speaking, a wanton and willful disregard will only be established by circumstantial evidence of the way a defendant drives. In addition, the State is only interested in punishing such a mental state when it is exhibited. A misan-

thrope may sit quietly in his room feeling wanton and willful disregard for the world, but unless he demonstrates his feelings through conduct — or in this statutory context drives "in a manner indicating" his feelings — the State is content to let him brood, The [statutory] language "drives his vehicle in a manner indicating a wanton and wilful disregard" expresses the State's interest in proscribing conduct exhibiting a certain disposition.

*Id,* at 58-59, 653 P.2d at 616. Unless the statute evinces intent to punish "wilful" or "wanton" behavior, then, it contains no subjective intent element.

Not all states with willful or wanton evasion statutes find that the term creates a subjective intent element. In *State* v. *Russell*, 229 Kan. 124, 127, 622 P.2d 658, 662 (1981), the Kansas Supreme Court did not ascribe to the statute a scienter element. The statute states that "[a]ny driver of a motor vehicle who willfully fails or refuses to bring his or her vehicle to a stop . . . shall be guilty of a misdemeanor." The *Russell* court held that "[t]o violate K.S.A. 8-1568 one needs only to ignore the activated emergency equipment of the police vehicle." *Russell*, 229 Kan. at 127, 622 P.2d at 662. Similarly, in *People* v. *Perez*, 22 Mich. App. 469, 472, 177 N.W.2d 685, 687 (1970), a case brought under a Michigan statute having a wilfulness element, the Michigan Court of Appeals held:

> defendant orally requested the court to charge that if defendant did not know the vehicle which attempted to stop him was a police vehicle and if he fled as a result of fear and apprehension, he could not then willfully evade and elude a police officer. This request relates to defendant's theory of the case rather than to any basic element of the offense.

In summary, the difference between our statute and those from other states underscores our conclusion that no intent element should be added to the statutory language. As the above precedents show, even if the statutory language were more supportive of defendant's position, the result would not be clear. We hold that 23 V.S.A. § 1133 creates a strict liability crime. Accordingly, there was no error in the charge to the jury. Because of this disposition, we do not reach the question of whether there would

have been plain error if a necessary intent element were omitted from the charge.

### III.

Defendant's third argument is related to the first two arguments. This argument is based on the fact that the knowledge and intent elements discussed above are not alleged in the information. As a result, defendant alleges that Counts II and III of the information were defective in not containing the essential elements of the crimes that defendant was charged with. Since the information failed in defendant's view to "charge an offense" in these counts, defendant argues that he can raise the defects for the first time on appeal without raising them below. See V.R.Cr.P. 12(b)(2); *State* v. *Kreth*, 150 Vt. 406, 553 A.2d 554 (1988).

In Part II of this opinion, we have held that the offense created by 23 V.S.A. § 1133 does not include an intent element. Thus, defendant has no claim that there was a defect in Count III of the information.

As to Count II of the information, the count tracked the statutory language. See 13 V.S.A. §§ 1023(a)(1), 1028. Defendant's argument is that the failure to specifically allege the implied element of knowledge requires reversal of the prosecution. We find this argument to be hypertechnical and reject it in the circumstances of this case.

The information must first and foremost inform the defendant of the cause and nature of the accusation against him in order to fulfill the requirements of Chapter I, Article 10 of the Vermont Constitution and the Sixth Amendment to the United States Constitution. *State* v. *Phillips*, 142 Vt. 283, 288, 455 A.2d 325, 328 (1982). The information must set forth the charges with sufficient particularity to allow the defendant to make an intelligent preparation of his defense. See *id.*; *State* v. *Bradley*, 145 Vt. 492, 495, 494 A.2d 129, 131 (1985). It is clear in this case that defendant was fully apprised of the charges against him and was not in any way prejudiced in preparing his defense. As noted above, defendant's own testimony showed he had the requisite knowledge for the offense set forth in Count II of the information. In addition, he was charged with doing the unlawful act "purposely," a term that requires knowledge. See, e.g., *Commonwealth*

v. *Comins,* 371 Mass. 222, 224-25, 356 N.E.2d 241, 243-44 (1976), *cert. denied,* 430 U.S. 946 (1977).

The information must also comply with the requirement of V.R.Cr.P. 7(b) that the "indictment or the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Because the defendant failed to object to the information below, he can now raise non-compliance with Criminal Rule 7(b) only to the extent that the indictment fails "to charge an offense." V.R.Cr.P. 12(b)(2). It is important at the outset to note that Criminal Rule 7(b) is intended "to eliminate technical rules of pleading, with their requirements of precision and detail, in favor of an approach based upon common sense and reason." Reporter's Notes to V.R.Cr.P. 7. Thus, the main purpose of the rule is to require that the "pleading serve its fundamental purpose of giving the defendant notice sufficient to allow him to formulate his plea and begin the preparation of his defense." *Id.*

Consistent with the purpose of V.R.Cr.P. 7(b), where the relevant statute does not specify a knowledge or intent element, we believe that the omission of such an implied element is not fatal, especially where defendant has failed to object below. See *United States* v. *Fusaro,* 708 F.2d 17, 23 (1st Cir.), *cert. denied,* 464 U.S. 1007 (1983); *United States* v. *McLennan,* 672 F.2d 239, 243 (1st Cir. 1982); *United States* v. *Dixon,* 596 F.2d 178, 180-81 (7th Cir. 1979); *United States* v. *Purvis,* 580 F.2d 853, 857 (5th Cir. 1978), *cert. denied,* 440 U.S. 914 (1979); *People* v. *Gutierrez,* 105 Ill, App. 3d 1059, 1062, 433 N.E.2d 361, 365 (1982).

Even if an omission of an implied element were fatal, the information in this case contains sufficient language to meet the test of Rule 7(b) in the absence of an objection in the trial court because it alleges that defendant acted "purposely."

## IV.

Defendant also contends that it was error for the trial judge to exclude certain evidence about the character of the police officer, Trooper Hall. Defendant proposed to introduce evidence that the police officer whom he allegedly attacked had previously used excessive force in making arrests. He intended to elicit this evidence from Trooper Hall. He argued that it was admissible under

V.R.E. 404(a)(2) (character of a victim) and 405(b) (specific instances of conduct to prove character).

The trial judge ruled that this evidence would be excluded on two grounds: (1) it was not relevant absent a showing that the defendant knew of the victim's violent character and (2) it would confuse the issues or mislead the jury. Defendant argues here that the ruling was erroneous in light of the specific language of V.R.E. 404(a)(2).

We agree with defendant that the ruling cannot be sustained on the grounds given by the trial judge. V.R.E. 404(a)(2) provides that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible. The rule does not provide that the defendant must know about the character trait of the victim. We accept, as the State has argued, that we have some older, prerule precedents requiring a showing of knowledge as a prerequisite to the admission of such evidence. See, e.g., *State* v. *Meader*, 47 Vt. 78, 81 (1874). We think that such precedents have not survived the adoption of the Vermont Rules of Evidence. See, e.g., 2 Weinstein's Evidence ¶ 404[06], at 404-49 (1988).

Although the ruling was in error for the reason given, the evidence was inadmissible for another reason. Thus, no "substantial right" of the defendant was denied by the erroneous ruling and there is no cause for reversal. See V.R.E. 103(a).

As noted above, as far as we can glean from the record, the only way that defendant proposed to prove the violent character of the victim was through examination of the victim or the use of records of complaints against him. The latter method is dealt with in the next section of this opinion. The record does contain a passing reference to reputation evidence, but we can find no point in the trial where defendant actually offered reputation evidence or where the trial court excluded such evidence.[3]

---

[3] The issue of character evidence was first raised by defendant's attempt to gain access to Trooper Hall's personnel file. The trial court denied access to the file on confidentiality grounds and ruled that defendant could depose Trooper Hall on complaints against him. Following the jury drawing, the court returned to the issue at the request of the prosecution. The prosecution later referred to the request as a motion in limine to prevent defendant from "going into prior instances of conduct with [Trooper] Hall." The court again returned to the issue just before Trooper Hall's testimony, this time at the request of the defense. The defense asked the court to reconsider its ruling denying access to the personnel file and to reconsider "the issue of my ability to depose [Trooper Hall]

■ The method of showing character, where allowed by V.R.E. 404(a), is governed by V.R.E. 405. The defendant may always prove character through testimony as to reputation. V.R.E. 405(a). The defendant may prove character through specific instances of conduct but only where "character or a trait of character of a person is an essential element of a charge, claim, or defense." V.R.E. 405(b). The reason for the limit is clear. Specific instances of conduct can be given too much weight without any real showing that they add up to a character trait. See generally 2 Weinstein's Evidence ¶ 405[04], at 405-46. There can be no claim that the alleged violent character of Trooper Hall was an "essential element" of defendant's defense. See, e.g., *State* v. *Superior Court,* 132 Ariz. 374, 645 P.2d 1288 (Ct. App. 1982). Thus, it could not be shown by specific instances of conduct. There was no error in excluding such evidence.[4]

## V.

Although all discovery was to be completed well before trial, defendant made a motion just before the jury drawing asking the court to order the State to produce the personnel file of Trooper Hall. His contention was that the file might contain exculpatory evidence which would show that Trooper Hall had on previous occasions used excessive force in making arrests. He justified the tardiness of the request on the fact that his counsel had just learned from other attorneys about Trooper Hall's "reputation for use of excessive force." As the motion developed, it became

---

prior to his testimony, and the ability to cross-examine on the character evidence." After again ruling the evidence inadmissible, the court allowed the prosecutor to examine Trooper Hall to show there were only two prior complaints of excess force and no action was taken against Trooper Hall because of either complaint. The examination occurred out of the presence of the jury. Defense counsel cross-examined Trooper Hall but continued to object because he could not carry on an adequate cross-examination without access to the personnel file. Defense counsel never suggested at any time that he desired to offer reputation evidence, and the motion in limine on which the court ruled never covered reputation evidence.

[4] Defendant has not suggested either here or in the trial court that the evidence was admissible under V.R.E. 608. In any event, the court acted well within its discretion under that rule in excluding the evidence. See *State* v. *LaRose,* 150 Vt. 363, 368, 554 A.2d 227, 231 (1988). Nor has defendant argued that the evidence was admissible under V.R.E. 404(b) for any of the reasons specified therein.

clear that he sought the file of the office of internal investigation within the Department of Public Safety. This office was created by 20 V.S.A. § 1923(b) to conduct investigations of allegations of misconduct by members of the Department of Public Safety, including the state police. He alleged that the internal investigation file on Trooper Hall might contain records of complaints made against him as well as disciplinary action taken against him.

The trial court initially denied defendant's motion but granted his request in the alternative to depose Trooper Hall in the presence of the court. Thereafter, the issue became caught up with the question of whether defendant had to show that he knew of Trooper Hall's violent character trait to offer the evidence. Because the trial judge ruled that the defendant had to know of the character trait, defendant abandoned the attempt to depose Trooper Hall. Just before Trooper Hall's testimony, defendant renewed his motion that he be given access to the internal investigation file. The court again denied the motion, citing as additional grounds that the file was not in the possession of the prosecution and that the request was late. Following this ruling, the court allowed the State to make a record consisting of the testimony of Trooper Hall that there had been two investigations of misconduct claims against him and in both no grounds for disciplinary action were found.

The specific records that the defendant requested are made confidential by 20 V.S.A. § 1923(d). There is no exception in the statute for use of the records in court proceedings. It is clear that the intent of the statute is that the records not be subject to disclosure except for the statutory purposes. Thus, the statute creates a form of evidentiary privilege in a court proceeding. See *Camp* v. *Howe,* 132 Vt. 429, 433, 321 A.2d 71, 73 (1974); V.R.E. 501.

Because of the confidentiality provision of § 1923, the prosecution did not have access to the file that defendant requested. Thus, the information was not in the "possession, custody, or control" of the prosecutor and was not subject to discovery under V.R.Cr.P. 16(a)(2). In this Court, defendant appears to agree that the discovery rules do not cover the information he sought. Instead, he argues that his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution require that he have access to the information. He bases his claim on the United States Supreme Court decision in *Pennsylvania* v.

*Ritchie,* 480 U.S. 39 (1987), and this Court's decision in *State* v. *Percy,* 149 Vt. 623, 631-36, 548 A.2d 408, 413-15 (1988).

In *Ritchie,* defendant was convicted of sexually assaulting his minor child. On appeal defendant claimed that the State's failure to disclose the contents of a Children and Youth Services (CYS) file violated the Confrontation Clause of the Sixth Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment. 480 U.S. at 45. The Supreme Court rejected the Confrontation Clause argument, finding that the right of confrontation is a trial right that is not violated by restrictions on pretrial discovery. *Id.* at 52-53. The Court drew, however, on the line of cases that impose on the government the obligation to turn over evidence in its possession that is favorable to the accused and material to guilt or punishment. To enforce this right, it required the trial court to conduct an in camera inspection of the privileged information to determine whether any was material to guilt or punishment. *Id.* at 57-58. It is this holding of *Ritchie* that defendant emphasizes here. He finds in it an absolute requirement that the trial court conduct an in camera inspection of the disputed records and contends that the failure to do so here warrants reversal.

A similar claim was made to this Court in *Percy,* where the defendant wanted access to the names of any mental health counselor who the victim saw in connection with her reactions to the alleged crime, along with all records of those visits. After analyzing *Ritchie,* this Court found significant differences that warranted denial of the defendant's request. The privilege in *Ritchie* was limited and did not prevent court access to the records. In *Percy,* the privilege was absolute. In *Ritchie,* the State had possession of the information; in *Percy,* the information was held by private individuals. In *Ritchie,* the defendant had a good claim that some of the information was material; in *Percy,* the defendant had no such claim. In *Ritchie,* the defendant sought a narrowly specified subpoena; in *Percy,* the defendant made a broad request for records with no attempt to narrow it. We emphasized these differences — particularly the procedural method used, the lack of any showing of materiality and the fact the State did not have the information—to uphold the denial of the defense request. We did recognize the "possibility that a case will arise where due process will require some access to privileged informa-

tion about the victim not held by the State . . . ." 149 Vt. at 635, 548 A.2d at 415.

■ We find that this case is governed by *Percy,* not *Ritchie,* and affirm the denial of access to the internal investigation file. Three reasons support this result. The first is the procedural posture of the case. Despite the discovery order issued by the trial judge, the defendant failed to raise the issue until the day of trial. The reasons given for delay were weak, and the trial judge was justified in denying the motion as untimely. Further, as in *Percy,* the defendant moved to require the prosecution to produce the file rather than issuing a subpoena to the record custodian. Compare *State* v. *Januszewski,* 182 Conn. 142, 170-74, 438 A.2d 679, 693-95 (1980), *cert. denied,* 453 U.S. 922 (1981). This put the prosecution in the untenable position of facing an obligation to disclose a file that it did not have and was unable to obtain.[5] Although the procedure is more justifiable where the records are held by a state agency, we still believe that the proper procedure is to attempt to subpoena the records. It is clear that the Department of Public Safety and the prosecutor do not have the same interests, and it is important that the department's position be stated directly. Cf. *Denver Policemen's Protective Ass'n* v. *Lichtenstein,* 660 F.2d 432 (10th Cir. 1981) (action brought by police association against the trial judge to prevent disclosure of police personnel files to criminal defendant). Finally, the defendant did not request an in camera inspection although he argues in this Court that such an inspection was required. See V.R.Cr.P. 16.2(f) (provides for in camera proceedings "[u]pon request.").

■ The second reason is the failure of the defendant to make a sufficient case of need under the circumstances. The defendant's sole justification for the information was to use it to show character pursuant to V.R.E. 404(a)(2). As we have held under Part IV of this opinion, defendant was precluded by V.R.E. 405 from showing the officer's character through specific instances of conduct. Although defendant's counsel made a vague reference to the officer's reputation, he made no offer of reputation evidence either before the jury or before the court to support the discovery motion. See *State* v. *Cano,* 154 Ariz. 447, 450, 743 P.2d 956, 959

---

[5] The state's attorney contacted the Department of Public Safety and was told "they do not release those files at all." There is no indication that the counsel for the defendant had any contact with the Department to obtain access to the file.

(Ct. App. 1987). Further, he made no argument that the information he sought might be admissible under V.R.E. 404(b) to prove something other than that the officer acted in conformity with his character trait, or under V.R.E. 608 to attack the officer's credibility. Thus, we can not say that the discovery request sought admissible evidence or information that would lead to admissible evidence. See *Taylor* v. *State,* 182 Ga. App. 494, 496, 356 S.E.2d 216, 217 (1987); *State* v. *Butts,* 640 S.W.2d 37, 39 (Tenn. App. 1982); *People* v. *Evans,* 104 Ill. App. 3d 598, 603-04, 432 N.E.2d 1285, 1290 (1982); *State* v. *Kaszubinski,* 177 N.J. Super. 136, 140, 425 A.2d 711, 714 (1980); *State* v. *Pew,* 39 Or. App. 663, 667-68, 593 P.2d 1198, 1200-01 (1979).[6]

Third, we are dealing here with a statutory privilege that makes the situation similar to that in *Percy.* Unlike *Ritchie,* the statute makes no provision for access to the confidential information by the courts. We note that in the states where decisions have given defendants wide access to law enforcement personnel files in cases involving a claim of self-defense, there is either no specific privilege or confidentiality statute or the statute authorizes the result. See *State* v. *Estrada,* 738 P.2d 812, 821-22 (Haw. 1987); *People* v. *Memro,* 38 Cal. 3d 658, 679-80, 700 P.2d 446, 461, 214 Cal. Rptr. 832, 847 (1985); *People* v. *Walker,* 666 P.2d 113, 121-22 (Colo. 1983).

As in *Percy,* we affirm the denial of access to the information sought by the defense based on the facts and circumstances of this particular case. We do not exclude the possibility that a defendant could have access to internal investigation files in a proper case and in a proper manner.

## VI.

Defendant's final contention is that he was denied a speedy trial in violation of his Sixth Amendment rights as imposed on the states by the Due Process Clause of the Fourteenth Amendment, *Barker* v. *Wingo,* 407 U.S. 514, 515 (1972), and in violation of this Court's Administrative Order 5, § 2. He bases his claim on the seven-month period between his arrest and the trial. He notes that where the defendant is in custody, as here, our Administra-

---

[6] Some courts have reached a similar conclusion on a harmless error analysis. See, e.g., *State* v. *Januszewski,* 182 Conn. at 174-75, 438 A.2d at 695-96.

tive Order contemplates that trial will be held within 90 days of arraignment absent exceptional circumstances.

■ Applying precedents of this Court and the balancing test of *Barker* leads us to conclude that defendant's right to a speedy trial was not violated. See *Barker*, 407 U.S. at 530 ("[a] balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis."). Some of the factors to consider in deciding this issue were identified in *Barker:*

> We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right [to a speedy trial]. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

407 U.S. at 530 (footnote omitted).

This Court applies these factors to a speedy trial analysis. *State* v. *Unwin,* 139 Vt. 186, 195, 424 A.2d 251, 257 (1980), *cert. denied,* 450 U.S. 1033 (1981). In *Unwin* we held that a defendant's right to a speedy trial was not violated even though more than six months elapsed between arraignment and trial and defendant was in jail for the entire time. 139 Vt. at 194, 424 A.2d at 256-57. The *Unwin* Court stated that "Administrative Order 5 permits but does not require a trial court to dismiss a criminal case which has not proceeded to trial within a certain period. . . . This question is for the sound discretion of the trial court, and will not be disturbed upon appeal." *Id.* at 195, 424 A.2d at 256 (citations omitted).

The length of the delay triggers review of the other factors. *Id.* at 195, 424 A.2d at 257. The reasons for the delay in this case cannot be described as a "deliberate attempt by the prosecution to hinder the defense." *Id.* at 196, 424 A.2d at 257. Rather, the delays in the case at bar were caused by discovery and scheduling. The Supreme Court held in *Barker* that these "neutral" reasons "should be weighted less heavily" against the government. 407 U.S. at 531. There, the two-week postponement of the trial caused by a missing witness was a valid reason for postponement and "serve[d] to justify appropriate delay." *Id.* Likewise, in this case, we find no violation of defendant's rights in the reasons for the delay.

It is incumbent on defendant to assert his right to a speedy trial in order to obtain reversal here as a result of delay. The Supreme Court emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532. Defendant did not raise the speedy trial issue until over five months after arraignment. At the time of the motion, trial was scheduled to start in four weeks. Although defendant's assertion of his right is evidence of whether he has been deprived of a speedy trial, when he did not raise the issue until two and a half months after the ninety days expired, we cannot give this evidence much weight.

The fourth factor considered by this Court is prejudice to the defendant caused by the delay in trial. This factor is particularly relevant where, as here, the defendant is in jail.

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker,* 407 U.S. at 532.

While we adopt the Supreme Court's test as the correct one when determining whether prejudice has occurred, it does not help defendant in the case before us. The defense does not make specific allegations of prejudice or anxiety of the accused. We cannot see any evidence in the record of prejudice to the defendant caused by the delay of trial. While we impress upon the trial courts the need to bring defendants, especially while in jail, to trial quickly, dismissal as a result of delay in this case is not warranted. See generally *State* v. *Roy,* 140 Vt. 219, 228, 436 A.2d 1090, 1094 (1981); *State* v. *Unwin,* 139 Vt. at 197, 424 A.2d at 258.

For the above reasons, the conviction in this case is affirmed.

*Affirmed.*