## In re Appeal of Wanda TINKER

[686 A.2d 946]

No. 96-012

October 9, 1996. The Department of Aging and Disabilities appeals an order of the Human Services Board reversing the Department's decision to substantiate an allegation of abuse against Wanda Tinker. The Department challenges the Board's holding that the charge of abuse of a disabled adult, see 33 V.S.A. § 6902(1), could not be substantiated unless Tinker knew or should have known of the alleged victim's disability. We affirm.

This case arises out of an altercation between members of a local rescue squad. Both Tinker and the alleged victim, L., were members of the squad. Following a verbal confrontation between Tinker and L., Tinker observed L. looking through the drawers of a desk for certain supplies. Tinker's jacket was lying on top of the desk. L. testified that Tinker grabbed her jacket off the desk and swung it around hard, striking L. in the side of the head. A zipper or snap on the jacket struck L. just below the eye, and she yelled out in pain. According to Tinker, she merely picked up the jacket to put it on, and if it hit L., it was an accident.

The area beneath L.'s eye became swollen and discolored. L. decided to call the police and press charges against Tinker. The police investigated, photographing the wound and interviewing witnesses. The police processed the complaint as an assault. Because L. is disabled (she suffers from a degenerative disk disease and receives disability benefits), the police referred the matter to the Department for investigation as a report of abuse. See 33 V.S.A. §§ 6902-6941 (reports of abuse of elderly and disabled adults). The Department substantiated the report, see id. § 6906(c), and Tinker applied to the Board for a fair hearing. See id. § 6906(d).

The hearing officer, in his recommendation to the Board, found that Tinker had provoked the incident and that she intentionally and recklessly swung her jacket at L.'s face. The Board agreed that the evidence supported those findings. Nonetheless, the Board reversed the decision to substantiate the report of abuse on the ground that the evidence did not support a finding that Tinker was aware of L.'s status as a disabled adult. In effect, the Board read into the definition of "abuse" in § 6902(1)(A) an "element that an alleged perpetrator knew, or should have known, that [the] 'victim' was, in fact, a 'disabled adult.'"

The Department argues that the Board erred by interpreting "abuse" to include the element of knowledge. The statute reads, in relevant part:

> "Abuse" means:
>
> (A) Any treatment of an elderly or disabled adult which places life, health or welfare in jeopardy or which is likely to result in impairment of health;
>
> (B) Any conduct committed with an intent or reckless disregard that such conduct is likely to cause unnecessary harm, unnecessary pain or unnecessary suffering to an elderly or disabled adult
> . . . .

33 V.S.A. § 6902(1). The Department maintains that these provisions impose strict liability for abuse of an elderly or disabled adult. With respect to § 6902(1)(B), that claim is inconsistent with the language of the statute; the provision contains an explicit scienter requirement. Unless a perpetrator knows, or should know, of a victim's age or disability, the perpetrator cannot act with an intent to cause harm to such a person, or with reckless disregard of causing such

harm. On its face, however, § 6902(1)(A) is silent as to a perpetrator's knowledge of a victim's age or disability status.

"When the Legislature is silent as to the mens rea required for a particular offense, this Court will not simply assume that the statute creates a strict liability offense, but will try to determine the intent of the Legislature." *State v. Audette*, 149 Vt. 218, 221, 543 A.2d 1315, 1317 (1988), *overruled in part on other grounds, State v. Sargent*, 156 Vt. 463, 465, 594 A.2d 401, 402 (1991). The Department analogizes this case to *State v. Searles*, where we refused to imply knowledge of age as an element of the crime of sexual assault on a minor. 159 Vt. 525, 529, 621 A.2d 1281, 1283 (1993). Statutory rape, however, "has traditionally been considered a strict liability offense, where 'mistake as to the age of an underage participant has been accorded no defensive significance.'" *Id.* at 527, 621 A.2d at 1283 (quoting Model Penal Code § 213.6 cmt. 2 (1980)). The crime of abuse of an elderly or disabled person does not carry this history. Nor is this a case where the Legislature has clearly chosen other elements of the crime as a substitute for intent. See *State v. Roy*, 151 Vt. 17, 26, 557 A.2d 884, 890 (1989).

The Department is correct that the relatively light penalty imposed for a violation of § 6902(1)(A) could support a conclusion that the Legislature intended to create a strict liability offense. See *Roy*, 151 Vt. at 25, 557 A.2d at 889 (one factor in determining whether Legislature intended to create strict liability offense is severity of punishment); *Audette*, 149 Vt. at 222, 543 A.2d at 1317 (lighter possible punishment makes it more likely that Legislature intended to impose liability without fault). A substantiated report of abuse as defined by § 6902(1)(A) does not give rise to criminal penalties; rather, the person found to have committed the abuse will be included in a registry that can be accessed by employers (such as nursing homes and hospitals) who hire individuals to care for elderly or disabled adults.* 33 V.S.A. § 6911; see *id.* § 6913.

We nonetheless agree with the Board that, given the purpose of the abuse statute and the registry established by § 6911, the Legislature did not intend to permanently identify and stigmatize a person who engages in abusive conduct, however minor or isolated, against an individual whose impairment is neither apparent nor known to the perpetrator. Conduct such as Tinker's, although unfortunate and unwise, is not a basis for effectively excluding Tinker from employment in hospitals, nursing homes, and similar facilities. We conclude that a report of abuse as defined by § 6902(1)(A) cannot be substantiated absent evidence that the perpetrator knew, or should have known, of the alleged victim's status as an elderly or disabled adult.

The Department further argues that the Board improperly made additional findings of fact instead of remanding the case to the hearing officer to make findings as to Tinker's knowledge of L.'s disability. We disagree with the Department's characterization of the Board's decision. The Board merely noted that the evidence did "not support a finding . . . that the petitioner was aware of L.'s status as a disabled adult." The Board was not obligated to remand the case to allow the Department to present additional evidence. As the findings reasonably support the Board's conclusions, the Board's decision will stand. See *In re Orzel*, 145 Vt. 355, 359, 491 A.2d 1013, 1015 (1985) (agency's conclusions of law will be upheld on appeal if fairly and reasonably supported by findings of fact).

*Affirmed.*

_____

* A violation of § 6902(1)(B) may be punished by a fine of not more than $10,000 and/or imprisonment for not more than eighteen months. See 33 V.S.A. § 6913(a).

**Gibson, J.**, concurring and dissenting. The majority construes 33 V.S.A. § 6902(1)(A) (abuse of elderly and disabled adults) to require knowledge that the victim is elderly or disabled. This construction is contrary to the statute's plain language and purpose. Because I believe the Legislature intended subsection (A) of the abuse statute to impose strict liability on abusers, I dissent.

The Department of Aging and Disabilities concluded that Wanda Tinker's actions toward L. constituted abuse under 33 V.S.A. § 6902(1), which states:

"Abuse" means:

(A) Any treatment of an elderly or disabled adult which places life, health or welfare in jeopardy or which is likely to result in impairment of health;

(B) Any conduct committed *with an intent or reckless disregard* that such conduct is likely to cause unnecessary harm, unnecessary pain or unnecessary suffering to an elderly or disabled adult . . . .

(Emphasis added.) I agree with the majority that a charge of abuse cannot be substantiated under subsection (B) unless the offender knew or should have known the victim was elderly or disabled; the subsection contains an explicit scienter requirement. The Human Services Board properly reversed the Department with regard to the charge under this provision.

Subsection (A), however, contains no explicit scienter requirement. The plain language clearly shows that the Legislature intended (B) to include an intent element and (A) to impose strict liability. This contrast in language parallels the contrast in penalties. Subsection (A), for instance, is a civil offense, whereas subsection (B) is a criminal offense. A violation of (A) results in the abuser's name being placed and maintained on a registry

with the Department; upon request, such information is available to an employer of caretakers for elderly and disabled adults if the request is accompanied by a release from the employee or prospective employee. See 33 V.S.A. § 6911(c)(3). A violation of (B) is also recorded on the Department registry, but in addition, may result in criminal prosecution and a fine of $10,000 or imprisonment for as long as eighteen months, or both. See *id.* § 6913(a).

The most important factor in determining whether the Legislature intended to impose strict liability is the severity of the punishment. *State v. Audette*, 149 Vt. 218, 222, 543 A.2d 1315, 1317 (1988), *overruled in part on other grounds, State v. Sargent*, 156 Vt. 463, 465, 594 A.2d 401, 402 (1991). The substantially lighter penalty for subsection (A) violations indicates that the Legislature intended to create a strict-liability offense. See *id.* (the lighter the punishment, the more likely Legislature meant to impose strict liability).

Most importantly, the majority construes the statute in a manner that defeats its purpose, which is to "protect elderly and disabled adults." 33 V.S.A. § 6901. According to the majority, "[c]onduct such as Tinker's, although unfortunate and unwise, is not a basis for effectively excluding Tinker from employment in hospitals, nursing homes, and similar facilities." 165 Vt. at 622, 686 A.2d at 948. I disagree. Conduct such as Tinker's is precisely the type of conduct that endangers people in hospitals and nursing homes. A person with a short temper who cannot control her behavior, even over a minor incident, should not be working with elderly or disabled adults, who are more vulnerable to abuse and often require considerable patience. The Department properly substantiated the charge of abuse, warranting that Tinker's name be maintained on the registry.

The majority also misstates the abuse statute by declaring that "the Legislature

did not intend to *permanently identify and stigmatize* a person who engages in abusive conduct, however minor or isolated." *Id.* at 622, 686 A.2d at 947-48 (emphasis added). The registry is confidential. See 33 V.S.A. § 6911(a) ("Information obtained through reports and investigations shall remain confidential."). Even employers of caretakers for elderly and disabled adults must obtain a signed release from a person to obtain his or her records. *Id.* § 6911(c)(3). Moreover, "[a] person may *at any time* apply to the department for expungement of his or her name from the registry." *Id.* § 6911(e) (emphasis added). The statute does not "permanently identify and stigmatize a person." It protects elderly and disabled adults from caretakers who are ill-suited to the position.

The abuse statute reflects our enhanced concern for the protection and well-being of elderly and disabled adults. Cf. *State v. Searles*, 159 Vt. 525, 528, 621 A.2d 1281, 1283 (1993) (Vermont law reflects enhanced concern for protection of minors by imposing strict liability for sexual acts with minor). "This Court [should] not imply a mental requirement . . . 'when the statutory language cuts against such a result and the policy behind the statute would be defeated.'" *Id.* at 527, 621 A.2d at 1283 (quoting *State v. Roy*, 151 Vt. 17, 25, 557 A.2d 884, 889 (1989)).

I respectfully dissent.