### State of Vermont v. Robert L. Venman

[564 A.2d 574]

No. 88-054

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned.**

Opinion Filed April 14, 1989

Motion for Reargument Denied May 16, 1989

---

562

*Jeffrey L. Amestoy, Attorney General,* and *Susanne R. Young, Assistant Attorney General,* Montpelier, for Plaintiff-Appellee.

*Peter F. Langrock* and *Anna E. Saxman* of *Langrock Sperry Parker & Wool,* Middlebury, for Defendant-Appellant.

**Dooley, J.** Defendant appeals his conviction under 33 V.S.A. § 2581(d) of two counts of knowingly filing false claims with the State of Vermont Medicaid Program. Defendant makes numerous claims on appeal: (1) that the trial court's denial of defendant's motion to sever the multiple counts brought by the State constitutes reversible error; (2) that the State failed to prove "deliberate overcharging," which defendant contends is an element of the offense; (3) that the trial court failed to instruct the jury on the element of "deliberate overcharging"; (4) that certain evidence which went to defendant's intent was erroneously excluded; (5) that the State did not prove beyond a reasonable doubt a knowing submission of a false claim and therefore defendant's motion for acquittal should have been granted; (6) that defendant's cross-examination and impeachment of adverse witnesses was unconsti-

tutionally restricted; (7) that the Medicaid Fraud Act is unconstitutional due to its penalty provisions; and (8) that defendant was denied a speedy trial. We reject each of these claims and affirm.

Viewing the evidence in the light most favorable to the State and excluding any modifying evidence, *State* v. *Norton,* 147 Vt. 223, 225, 514 A.2d 1053, 1055 (1986), the facts are as follows. Defendant is a practicing surgeon in Middlebury, Vermont. On April 6, 1987, he was charged with and arraigned on twenty-nine counts of filing false claims with the Medicaid Program. The information alleged that defendant "knowingly filed and caused to be filed under [the] Vermont Medicaid Program" false claims "in violation of 33 V.S.A. § 2581(d) as punishable by 33 V.S.A. § 2583." On October 23, 1987, defendant filed a motion to sever the charges, which the trial court denied. On its own motion, however, the court chose to divide the case due to the complexity of the counts and allowed the State to proceed on only twelve counts. One of these counts was dismissed by the State, and trial was commenced on the remaining eleven. The jury returned a verdict of guilty on two of the eleven counts.

To understand the charges against defendant, it is helpful to examine certain features of the Medicaid Program. Vermont's Medicaid Program pays for free medical care for eligible needy Vermonters. Eligible recipients are issued a card which they take to a provider when they receive care. Using the card number provided by the recipient, the provider then bills the State of Vermont for the services provided. The claims for services are actually submitted to the Medicaid Program's fiscal intermediary, EDS Federal Corporation (EDS). EDS then reimburses the provider based on the itemized claim submitted. Each claim must be submitted on forms which require the provider to state certain information such as the name of the Medicaid recipient, the date services were provided, the kinds of services provided, the number of services provided, and the identifying provider number. Most importantly for the case at bar, the provider must describe the type of service rendered through use of a procedure code. The procedure code determines how much the provider will be paid for the services rendered to the recipient.

Defendant was originally investigated by the Medicaid Fraud Control Unit of the Attorney General's Office because of what appeared to be excessive use of a particular procedure code. The allegation against defendant was that he repeatedly filed claim

forms stating that a consultation with a referring physician had occurred when, in fact, he had conducted no more than an office visit with no involvement of another physician.

The procedure code for an office visit entitles the provider to a payment of $8.00. The procedure code for a complex consultation, on the other hand, entitles the provider to a payment of $45.00. A consultation is defined in the American Medical Association, *Physician's Current Procedural Terminology Manual* (4th ed.) as:

> services rendered by a physician whose opinion or advice is requested by a physician or other appropriate source for the further evaluation and/or management of the patient. When the consulting physician assumes responsibility for the continuing care of the patient, any subsequent service rendered by him will cease to be a consultation. Five levels of consultation are recognized: limited, intermediate, extensive, comprehensive and complex consultation.

Defendant was accused of filing Medicaid claim forms which billed for consultations when, in fact, the services in question involved only an office visit.

Defendant was convicted on counts one and four of the information brought against him. Count one involved an undercover visit to defendant by a Medicaid fraud investigator. Using an alias, the investigator posed as a Medicaid recipient. Defendant examined the investigator for four minutes. No other physician's name was mentioned during the visit, nor did the investigator provide defendant or his staff with information about another physician. The claim form filed by defendant indicated that defendant rendered a consultation on the investigator's behalf with a Dr. William Barrett. Defendant wrote Dr. Barrett's name as the referring physician in his personal daily log. Defendant's secretary then filled out a claim form stating the same, which defendant signed. Subsequent investigation showed that Dr. Barrett knew of no patient by the name used by the investigator. The investigator denies having ever mentioned Dr. Barrett's name as a referring physician or having met with Dr. Barrett prior to the investigator's visit to defendant.

Count four charged that defendant rendered services to a certain patient and then billed Medicaid for a consultation with a Dr. Henderson. As with count one, the evidence was that no consultation occurred.

## I.

First, defendant argues that the denial of his motion to sever constitutes reversible error. Defendant moved prior to trial for severance of the counts against him, alleging that V.R.Cr.P. 14(b)(1)(A) gave him an absolute right to severance because the offenses were joined solely because they were "of the same or similar character." The motion was denied. V.R.Cr.P. 14(b)(4)(B) provides:

> If a defendant's pretrial motion for severance was overruled, he may renew the motion on the same grounds before or at the close of all the evidence. Severance is waived by failure to renew the motion.

At the close of all the evidence, and after arguments on various motions by defendant, defendant's counsel stated:

> I want to place two things on the record, your Honor. One is in connection with our previous motion for sequestration. At this time I would ordinarily call my client on some of the counts and not on other counts, but because of the joinder I do not feel I can put him on the stand . . . .

We will treat this statement as a reference to defendant's former motion for severance.[1] The defendant made no further motions at that time. Instead, defendant's counsel went on to discuss certain evidentiary rulings made by the court. Later, in his motion for new trial, defendant renewed his motion to sever.

We have recently held that offenses which are part of a single scheme or plan can be joined without the defendant having an absolute right to sever under V.R.Cr.P. 14(b)(1)(A). *State* v. *Chenette,* 151 Vt. 237, 242-43, 560 A.2d 365, 370 (1989). The reason is that the offenses are not joined "solely on the ground they are of the same or similar character," the prerequisite for the severance right. *Chenette* is also a Medicaid fraud case where the provider used a particular method to prepare and submit false claims. This Court held that the common methodology "showed a single scheme or plan rather than a number of isolated instances" even though all of the offenses were not closely connected in time.

---

[1] Defendant did not move for sequestration before trial; in fact, the record shows defendant did not object to sequestration. We assume, then, that trial counsel intended to say "severance" when he said "sequestration."

*Id.* at 243, 560 A.2d at 370. See also *State* v. *Moore,* 131 Vt. 149, 155-56, 303 A.2d 141, 145 (1973) (pre-Rule case in which common scheme or plan found in two robberies of separate branches of the same bank using the same accomplice).

The concept of a common (or single) scheme or plan is taken from F.R.Cr.P. 8(a). See also V.R.Cr.P. 8(a)(2). The federal rule has been liberally construed to allow joinder of offenses. See generally Decker, *Joinder and Severance in Federal Criminal Cases: An Examination of Judicial Interpretation of the Federal Rules,* 53 Notre Dame Law. 147, 152-53 (1977). A leading treatise notes:

> As for the "common scheme or plan" part of the federal provision, it will permit joinder of offenses which may not be close together in a time-space sense but which may be viewed as facets of a general criminal undertaking. Illustrative is *United States* v. *Barrett,* [505 F.2d 1091 (7th Cir. 1974)] holding that charges of bribery, tax evasion, and mail fraud were properly joined because they all were instances of the defendant using his public office for personal gain.

2 W. LaFave & J. Israel, Criminal Procedure § 17.1(a), at 353 (1984). See also *United States* v. *Golomb,* 754 F.2d 86, 88 (2d Cir. (1985) (series of crimes committed as part of fencing of stolen goods operation found to be part of common scheme or plan); *United States* v. *Gordon,* 655 F.2d 478, 484-85 (2d Cir. 1981) (common scheme of fraud by investment adviser found even though offenses joined together involved four separate schemes with four separate victims).

 The State's information was sufficient to charge a single scheme or plan. Therefore, defendant had no absolute right to severance under V.R.Cr.P. 14(b)(1)(A). In order to obtain a severance, the defendant had to show that the severance was appropriate (before trial) or necessary (during trial) for "a fair determination of the defendant's guilt or innocence of each offense." V.R.Cr.P. 14(b)(1)(B). The trial court has discretion in making this determination. *State* v. *Chenette,* 151 Vt. at 243, 560 A.2d at 370. The requirement of V.R.Cr.P. 14(b)(4)(B) that the motion for severance be renewed at the close of the evidence was placed in the rule to allow the court to make this discretionary determination when the relevant facts are known. The Reporter's Notes to Rule 14 state that renewal is appropriate "to show that the potential prejudice which his pre-trial motion claimed has actu-

ally occurred." This point is amplified in the commentary to the American Bar Association's Minimum Standards for Criminal Justice, the source of the waiver rule:

> [T]he extent of the prejudice resulting from joinder may not be apparent until the trial unfolds. As a result, it is appropriate for the defendant to renew the motion in order to alert the court of the necessity for reconsidering its original decision. By placing the burden upon the defendant to renew the motion, the standard permits the defendant to reevaluate the issue of prejudice and to elect to proceed with a consolidated trial despite the risk of prejudice. Therefore, failure to renew the motion constitutes a waiver of any right to severance.

Standards for Criminal Justice § 13-3.3(c), Commentary at 13.41 (2d ed. 1988) (footnote omitted).

We cannot find that defendant's statement at the close of all the evidence made a sufficient showing of prejudice to require the trial court to exercise its discretion in favor of severance. At best, counsel's statement was cryptic and sparse. The statement never sought action from the court as required by the rule.

In *State* v. *Richards,* 144 Vt. 16, 19, 470 A.2d 1187, 1189 (1983), this Court held that a motion for a severance under Rule 14(b)(1)(B) must be accompanied by "substantial evidence of prejudice." Defendant here failed to make any specific showing of prejudice. Accordingly, defendant has failed to preserve his request for severance and may not raise its denial as error on appeal.[2]

## II.

Defendant next argues on appeal that (1) deliberate overcharging is an element of the offense charged, and (2) that the trial court failed to instruct the jury on the element. Defendant's claim is based on this Court's decision in *State* v. *Dorn,* 145 Vt. 606, 496 A.2d 451 (1985). *Dorn* is a Medicaid fraud case in which the defendant argued that the State failed to allege an offense under

---

[2] While we have decided the issue based on failure to preserve under the rule, we would necessarily reach the same decision on the merits of defendant's severance motion since defendant failed to establish the prejudice required by *State* v. *Richards* to demonstrate abuse of the trial court's discretion.

the Medicaid Fraud Statute, 33 V.S.A. § 2581(d), because it failed to state that defendant's claims were both false and for unauthorized items or services. This Court disagreed, holding that the State must prove only that defendant knowingly filed a false claim. *Id.* at 612, 496 A.2d at 454-55. Using this ruling, the defendant in that case went on to argue that the statute was vague because it would allow a criminal prosecution for an underbilling which was knowingly made. We rejected such an argument, finding that an underbilled claim would not be "false" and added that the statute prohibits "deliberate overcharges." *Id.* at 613, 496 A.2d at 455. Defendant here takes the latter statement as adding an element to the crime, namely that defendant committed deliberate overcharging. He seeks reversal because this element was not proved and was not included in the charge to the jury.

At the outset, we note that neither of these arguments were preserved for appeal because they were not raised below. See *State* v. *Mecier,* 145 Vt. 173, 177, 488 A.2d 737, 740 (1984). While defendant relied upon *Dorn* in his requests to charge, he did not argue at that time that it created an element of the offense. Nor did defendant claim that the information filed by the State was defective because it omitted an element from the offense — that is, deliberate overcharging.

While we can review claims in the absence of preservation when we find plain error, we find no error in this case. See *State* v. *Bushey,* 149 Vt. 378, 380, 543 A.2d 1327, 1328 (1988) (first step in plain error analysis is to determine whether error occurred). A complete reading of *Dorn* makes clear that the Court did not add an element to the offense of Medicaid fraud. Instead, it explained an existing element — that is, "knowing falsity" — in the context of the *Dorn* case. The failure of the trial court to charge deliberate overcharging as an element of the offense and the failure of the State to prove this alleged element do not constitute error.

### III.

Defendant next argues that evidence relating to his intent was excluded and that this exclusion constituted a violation of his confrontation and due process rights under the United States Constitution and his rights under Chapter I, Article 10 of the Vermont Constitution. Since the record does not support defendant's contention that he was prohibited from introducing the evi-

dence in question, we do not reach the issue of whether such an exclusion would violate a defendant's constitutional rights.

Defendant alleges that the trial court did not allow him to show the actual amount of money paid to him by the Medicaid Program compared to the amount he was entitled to receive. This evidence underlies his constitutional claim. The record shows that defendant was allowed to introduce this evidence despite his argument in this Court.

At one point in the trial, defendant offered to prove that the difference between the dollar amount defendant obtained due to the use of the false code and the amount he would have obtained through a different billing code was minuscule. He argued that this was probative of a lack of intent. Although at first the trial court upheld the State's objection to the admission of this evidence on relevancy grounds, the record clearly shows defendant later was able to introduce the evidence he sought. Defendant inquired of two State witnesses on cross-examination about the difference in payment allowed under different consultation codes. Defendant showed that the difference in payment was very small. Therefore, defendant's argument that he was not allowed to introduce this evidence is without merit.[3] Any error in the initial ruling was rendered harmless by the correction. See, e.g., *State* v. *Daudelin,* 151 Vt. 214, 216-17, 559 A.2d 668, 669 (1989); *State* v. *Turner,* 150 Vt. 72, 74, 550 A.2d 5, 6 (1988).

## IV.

■ Defendant moved for judgment of acquittal pursuant to V.R.Cr.P. 29 at the end of the State's case and at the close of the evidence. Defendant argues that the trial court's denial of this motion was error. We have stated that the "standard for appellate review of denial of a motion for acquittal is whether the evidence, when viewed in the light most favorable to the State, is sufficient to convince a reasonable trier of fact that the defendant

---

[3] The State argues that a second reason exists for rejecting defendant's argument on this point — that is, that the evidence defendant did introduce was irrelevant. The State's contention was that defendant charged for consultations when no consultation occurred. Defendant asked the State's witnesses what the differential was between two different consultation codes. The State argues that this information has no bearing on this case. We need not decide that claim in view of our disposition.

is guilty beyond a reasonable doubt." *Dorn,* 145 Vt. at 615, 496 A.2d at 456.

Defendant's contention is that the State failed to prove beyond a reasonable doubt the requisite intent to knowingly file false Medicaid claims. He bases this argument on his position that the term "consultation" is not defined uniformly and that he did not understand the concept of "consultation" as meant by the Medicaid Program.

As discussed in the facts, the medical profession's "Current Procedural Terminology" manual defines consultation to mean a discussion or referral and discussion between two or more physicians. Defendant relies on other dictionary definitions, but the availability of alternative definitions does not mean that the factfinder could not accept the plain meaning of the term as offered by the State in the context of billing for medical services rendered. In addition to the definition of consultation as applied by the Medicaid Program, the common usage of the term "consultation" among doctors is exemplified by defendant's own actions. The State showed that on at least two occasions defendant falsely claimed, by writing in his own hand in his daily log, that a patient he had seen was referred to him by another physician. On these two occasions, neither patient had been referred by the doctor *whom* defendant identified. In fact, no referral occurred at all. From this evidence, a reasonable factfinder could have concluded that defendant knew what was meant by consultation and that he knowingly billed for a consultation when none, in fact, occurred. Since it was the jury's role to sift through the evidence and determine what to believe and credit, see *State* v. *Daigle,* 136 Vt. 178, 180, 385 A.2d 1115, 1116 (1978), we must affirm the denial of the motion for acquittal.

## V.

Defendant's next argument is that the trial court unconstitutionally restricted defendant's cross-examination and impeachment of State witnesses. This argument is based on the trial court's failure to require a State witness to produce, during cross-examination, documents upon which she was relying in her testimony. The record shows that the documents were in her office and were not with her in court. Defendant argues that the State failed to produce these documents and that the court refused to

require their production. In fact, the trial court ruled that defense counsel could subpoena the documents and conduct his own examination in his case in chief. Defendant argues that this was an unreasonable burden to place upon him.

■ Under V.R.E. 611(a), the trial court is given "reasonable control over the mode and order of interrogating witnesses and presenting evidence" for three purposes: orderly and effective interrogation and presentation of witnesses, avoidance of needless time consumption and protection of witnesses from harassment or undue embarrassment. As the Reporter's Notes to the rule point out, this is an area of trial court discretion. See also *State* v. *Bessette,* 148 Vt. 17, 19, 530 A.2d 549, 550 (1987) (trial court has "wide discretion in matters of trial conduct and evidentiary rulings"; "order of proof is in the discretionary control of the trial court"). We believe that the trial court's rulings in this case properly fell within its discretion and were not erroneous. Defendant's claim that he was denied the opportunity for effective cross-examination is simply not supported by the record.

## VI.

Defendant argues that the applicable penalty provisions under which he was sentenced, 33 V.S.A. § 2583(a)(3), are unconstitutional under the Eighth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment and under Chapter II, § 39 of the Vermont Constitution. The essence of his argument is that the penalty, potentially ten years in jail on each count, is disproportionate to the offense of billing for a few extra dollars for the patient involved in the count.

■ In analyzing this claim, we must first decide whether the federal and state constitutional provisions set different standards on judging the validity of criminal penalties. The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment is applicable to the states. See *Solem* v. *Helm,* 463 U.S. 277, 286-87 n.11 (1983). A punishment will run afoul of the Eighth Amendment if it is "grossly disproportionate" to the offense for which it is imposed. See *id.* at 288.

Chapter II, § 39 of the Vermont Constitution provides in pertinent part that "all fines shall be proportioned to the offences." This Court has applied a similar analysis to that of the U.S. Supreme Court in our cases interpreting Chapter II, § 39. See *State v. Burlington Drug Co.*, 84 Vt. 243, 249-50, 78 A. 882, 884-85 (1911); *State v. Constantino*, 76 Vt. 192, 196, 56 A. 1101, 1101 (1904). In *Constantino*, this Court held that a penalty would not run afoul of the constitutional restriction unless it were "clearly out of all just proportion to the offense." 76 Vt. at 196, 56 A. at 1101. For purposes of the issues before the Court in this case, we find no relevant difference between the state and federal constitutional standards. Accordingly, we will analyze defendant's claim under the applicable federal constitutional precedents.

In *Solem v. Helm*, 463 U.S. at 292, the Supreme Court articulated a three-part test for determining whether a punishment is grossly disproportionate to an offense:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other [similarly situated] criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

The application of this test shows that the punishment in this case is within constitutional limits. The crime for which defendant was convicted is also a federal crime because the Medicaid Program is partially funded by the federal government. See 42 U.S.C. § 1320a-7b(a)(1). The federal crime is also a felony with a maximum penalty of a $25,000 fine and 5 years in prison. 42 U.S.C. § 1320a-7b(a). Prior to 1977, the federal crime was a misdemeanor, but the punishment was raised in § 4(b) of the Medicare-Medicaid Antifraud and Abuse Amendments of 1977, Pub. Law 95-142 (Oct. 25, 1977). The report of the House Ways and Means Committee on the bill described the intent behind the increase in penalties:

> Existing law provides specific penalties under the medicare and medicaid programs for certain practices . . . [such as] the submission of false claims . . . . [The crimes] are misde-

meanors under present law and punishable by a maximum $10,000 fine, up to one year imprisonment, or both.

. . . .

Recent hearings and reports, however, indicate that such penalties have not proved adequate deterrents against illegal practices by some individuals who provide services under medicare and medicaid. In addition, these misdemeanor penalties appear inconsistent with existing federal criminal code sanctions which make similar actions punishable as felonies.

House Rep. No. 95-393(I) to Accompany H.R.3, 95th Cong., 1st Sess., (June 7, 1977), *reprinted in* 1977 U.S. Code Cong. & Admin. News 3039, 3055. The report notes that the committee found a "disturbing degree" of fraud in the federal programs and that this fraud cheats taxpayers at the federal level, diverts needed money from poor people who rely on the programs for health care, erodes the financial stability of state governments and unfairly calls into question the honesty of health care providers. *Id.* at 3047.

We think the rationale provided in the Congressional findings is adequate to uphold the penalties for Medicaid provider fraud contained in the Vermont and federal statutes. The State has provided us examples of the maximum penalties set in other states to show that our maximum penalties are similar to those in effect elsewhere. See, e.g., Mass. G.L.A. ch. 118E, § 21A (1980) (maximum penalty is $10,000 fine and five years in jail). While some of the penalties for comparable Vermont crimes are misdemeanors, others are felonies. Compare 13 V.S.A. § 2502 (petit larceny, misdemeanor) with 13 V.S.A. § 2531 (embezzlement of any amount, felony).

A major part of defendant's argument is that the penalty is unfair in a multi-count prosecution because the aggregate maximum penalty is exorbitant. This Court answered that argument under the Vermont Constitution in *State* v. *O'Neil,* 58 Vt. 141, 165 (1885) (emphasis in original):

It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary, on the ground that he had committed so many burglaries that, if punishment for each were inflicted on

him, he might be kept in prison for life. The mere fact that cumulative punishments may be imposed for distinct offenses in the same prosecution is not material upon this question. If the penalty were unreasonably severe for a *single* offense, the constitutional question might be urged; but here the unreasonableness is only in the number of offenses which the respondent has committed.

Although defendant faced a theoretical punishment of 10 years in jail for each count of which he was convicted, the actual sentence involved only thirty days of incarceration, to be served on weekends.

## VII.

Defendant's final argument on appeal is that he did not receive a speedy trial as required by the Sixth Amendment of the United States Constitution and Chapter I, Article 10 of the Vermont Constitution. Defendant also points to our Administrative Order No. 5, § 3, which states that "[t]he prosecution and defense of all cases shall be prepared and ready for trial within six months from the date of arrest." He argues that the six and one-half months that elapsed between arraignment and trial shows a violation of the requirements of the administrative order which necessarily means that he was denied the constitutionally mandated speedy trial.

We have held that the administrative order "forms part of the internal operating procedures of the trial courts and neither grants nor deprives a criminal defendant of any procedural or substantive rights." *State* v. *Snide,* 144 Vt. 436, 441, 479 A.2d 139, 142 (1984) (citing *State* v. *Chamberlin,* 131 Vt. 549, 550-51, 310 A.2d 30, 32 (1973)). As we stated in *Snide,* "[a]lthough criminal cases should be prepared and ready for trial within six months of an arrest, this order cannot be invoked by defendant as a matter of right, and a speedy trial violation is not predetermined by its operation." *Id.* at 441, 479 A.2d at 142-43 (citation omitted). Thus, the failure to bring defendant to trial within the time limits of the administrative order, assuming that occurred in this case, does not mean that defendant was denied a speedy trial such that the case against him must be dismissed. To determine whether defendant's speedy trial rights have been violated, we must analyze the circumstances of this case according to the stan-

dards announced by the U.S. Supreme Court in *Barker* v. *Wingo,* 407 U.S. 514 (1972), and most recently by this Court in *State* v. *Roy,* 151 Vt. 17, 35-37, 557 A.2d 884, 895-96 (1989); *State* v. *Yudichak,* 151 Vt. 400, 404-07, 561 A.2d 407, 409-12 (1989); and *State* v. *Recor,* 150 Vt. 40, 42-43, 549 A.2d 1382, 1384-85 (1988).

In *Recor* we applied the four factor test as enunciated by the United States Supreme Court in *Barker* to determine whether a defendant's speedy trial right has been violated. 150 Vt. at 42, 549 A.2d at 1384. Those four factors are "the length of the delay, the reason for the delay, defendant's assertion of his or her right, and prejudice to the defendant." *Id.* (citing *State* v. *Snide,* 144 Vt. at 442, 479 A.2d at 143). As in *Recor,* an application of these factors to the case at bar leads us to conclude that defendant's speedy trial claim is without merit.

Defendant was arraigned on April 6, 1987. Trial commenced on October 27, 1987. Status conferences were held on May 5, 1987, August 24, 1987, and September 21, 1987. The record shows that at none of these status conferences did defendant demand a speedy trial. On October 23, 1987, defendant filed a motion to dismiss for lack of prosecution. In that motion, defendant alleged prejudice. Trial commenced four days later. Since prejudice to the defendant is the most important factor in analyzing speedy trial issues, we address this element first. *State* v. *Bristol,* 143 Vt. 245, 249, 465 A.2d 278, 280 (1983).

The prejudice alleged by defendant was that the State had time to build its case against him and that defendant's medical practice was being impacted by the pending litigation. In *State* v. *Unwin,* 139 Vt. 186, 197, 424 A.2d 251, 257 (1980), we stated that "[t]he most important consideration . . . is prejudice to the defense at trial." Even if we were to accept that the time used by the State to build a case against the defendant could create prejudice, we find nothing in the record to support a finding of prejudice in this case. Defendant's claim that his ability to carry on his medical practice was impacted by the pending litigation does not normally constitute the type of prejudice that causes dismissal of a criminal complaint. As in *State* v. *Bristol,* 143 Vt. at 249, 465 A.2d at 280, we conclude that defendant's allegation of prejudice in this case reduces to an "unsupported assertion that delay is per se prejudicial." That allegation is insufficient to tip the prejudice factor of the four-part test towards defendant.

It is clear that the other *Barker* factors do not help defendant's argument. Defendant never asserted his speedy trial right and demanded an earlier trial. We do not equate the motion to dismiss with an assertion of the speedy trial right. See *State* v. *Yudichak,* 151 Vt. at 406, 561 A.2d at 411; *State* v. *Unwin,* 139 Vt. at 196, 424 A.2d at 257. The length of delay was only a short period beyond the administrative order standard where the defendant is not incarcerated. It appears from the record that the delay was caused by the difficulty in scheduling a long trial. While court delay must count against the State, it weighs less heavily in the balance. See *State* v. *Roy,* 151 Vt. at 36, 557 A.2d at 896. There was no denial of a constitutionally mandated speedy trial in this case.

*Affirmed.*