# State of Vermont v. Christopher L. Bacon

[702 A.2d 116]

No. 96-548

Present: Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 29, 1997

*Jeffrey L. Amestoy,* Attorney General, Montpelier, *John Treadwell,* Special Assistant Attorney General, and *Joseph L. Winn,* Assistant Attorney General, Waterbury, for Plaintiff-Appellant.

*Jesse M. Corum IV* of *Gale, Corum & Stern,* Brattleboro, for Defendant-Appellee.

*Robert Appel,* Defender General, and *William A. Nelson,* Appellate Attorney, Montpelier, for Amicus Curiae Office of Defender General.

 **Johnson, J.** We consider for the second time the circumstances under which a presentence investigation report (PSI) should be disclosed to persons other than the defendant, defense counsel, and the attorney for the state. See V.R.Cr.P. 32(c)(3). In *State v. LaBounty,* 167 Vt. 25, 702 A.2d 82 (1997), we held that PSIs are not subject to a qualified First Amendment right of access, and should not be routinely disclosed to the press and public. *Id.* at 27, 702 A.2d at 83. We left open the question posed in this case: whether, and upon what showing, a third party should be granted access to a PSI. The district court in this matter granted defense counsel's request for disclosure of the PSI of defendant's accomplice, Charles Gundlah, and

of the PSIs of other individuals in Vermont who received sentences of life-without-parole in recent years. The State, through the Department of Corrections, opposes disclosure and appeals the court's order. We hold that a defendant seeking access to another individual's PSI must support the request with a plausible showing of materiality; upon such a showing, the district court should review the PSI and disclose only that information, if any, that is material to guilt or punishment. Accordingly, we vacate the court's order requiring the Department to distribute the requested PSIs to counsel. We conclude, however, that the court should review Gundlah's PSI in camera and disclose any information material to defendant's sentence.

## I.

In April 1991, defendant and Charles Gundlah escaped together from a prison work crew and embarked on a brief but violent period of criminal activity, culminating in the murder of Robin Colson. Following a jury trial, Gundlah was convicted of felony murder, see 13 V.S.A. § 2301, as well as a number of other charges related to the murder, and received a cumulative sentence of seventy-two years to life. We recently affirmed Gundlah's felony-murder conviction. *State v. Gundlah*, 166 Vt. 518, 520, 702 A.2d 52, 53 (1997). Defendant was initially convicted as accessory to the murder and was sentenced to life-without-parole; we reversed that conviction because of an error in the jury charge. See *State v. Bacon*, 163 Vt. 279, 283, 658 A.2d 54, 58 (1995). After a second trial, defendant was convicted of felony murder for his role in the death of Robin Colson.

Prior to sentencing, defense counsel sought access to the PSIs of other individuals in Vermont who have received a sentence of life-without-parole. In support of the motion, counsel argued that he should be able to review the circumstances surrounding crimes in which such a sentence has been imposed. Counsel also requested disclosure of Gundlah's PSI.

The Department of Corrections opposed disclosure of the PSIs. The Department emphasized the need to preserve confidentiality of the information contained in PSIs. The Office of Defender General also opposed disclosure, at least with respect to two specific PSIs, because the subjects of those PSIs did not consent to disclosure.

The court granted defense counsel's request and ordered the Department of Corrections to distribute copies of four specific PSIs, including Gundlah's, to defense counsel, the state's attorney, and the court. Recognizing the need to maintain confidentiality, the court

restricted access to the PSIs to the attorneys involved in the case,[1] and ordered that the documents be returned to the Department of Corrections after sentencing. The Department sought and received permission to appeal the court's order as a collateral final order. See V.R.A.P. 5.1. The sentencing proceedings have been stayed pending resolution of this appeal.

## II.

In *LaBounty* we declined to recognize a qualified First Amendment right of access to PSIs, and refused to disclose two specific PSIs as requested by a newspaper. *LaBounty,* 167 Vt. at 30, 702 A.2d at 85. Nonetheless, we implicitly acknowledged, as have many other courts, that the confidentiality of PSIs is not absolute. *Id.* at 31, 702 A.2d at 86; see, e.g., *United States v. Huckaby,* 43 F.3d 135, 138 (5th Cir. 1995) (no court has held that confidentiality of information contained in PSI must be maintained under all circumstances); *United States v. Corbitt,* 879 F.2d 224, 239-40 (7th Cir. 1989) (in some situations, PSI may be disclosed to meet particularized need arising out of pending or contemplated litigation); *Halacy v. Steen,* 670 A.2d 1371, 1372 (Me. 1996) (confidentiality of PSIs not absolute). We now address more fully the circumstances under which third parties may obtain access to PSIs.

With one possible exception, courts that have considered third-party requests for access to PSIs have refused disclosure absent a significant, particularized need on the part of the requester. See, e.g., *United States v. Julian,* 486 U.S. 1, 12 (1988) (courts have typically required showing of special need before disclosing PSI to third party); *Huckaby,* 43 F.3d at 138 (with respect to disclosure of PSIs, standard has evolved that permits limited disclosure where compelling, particularized need is shown). But see *United States v. Schlette,* 842 F.2d 1574, 1581 (9th Cir.), *modified,* 854 F.2d 359 (9th Cir. 1988) (in given case, if reasons for maintaining confidentiality of PSI do not apply, party seeking disclosure should not be required to demonstrate large compelling need). In support of the strong presumption against disclosure, courts typically rely upon the same reasons advanced by the Department for preserving the confidentiality of PSIs. These

---

[1] The court did not allow defendant to review the PSIs. The Office of Defender General, in its amicus brief, argues that defendant should be permitted access to any PSIs disclosed by the court for use at sentencing. Defendant did not request such access, nor does he contest this portion of the court's order on appeal.

policy concerns include encouraging and protecting potential sources of information who are chary of publicity; protecting the privacy of victims and other individuals that provide information; protecting the privacy of defendants; and preventing the release of unsupported, irrelevant information. See, e.g., *United States v. Trevino*, 89 F.3d 187, 191 (4th Cir. 1996); *Halacy*, 670 A.2d at 1374.

Some disclosure has been permitted, however. Courts have generally recognized the validity of requests by criminal defendants seeking possible exculpatory or impeaching information in PSIs prepared about government witnesses. See, e.g., *United States v. DeVore*, 839 F.2d 1330, 1332 (8th Cir. 1988) (no abuse of discretion where district court reviewed PSI of defendant's accomplice and disclosed that portion of report containing accomplice's version of crime). Rarely, courts have approved disclosure for other purposes, such as use in a related civil proceeding. See *Dowd v. Calabrese*, 101 F.R.D. 427, 441 (D.D.C. 1984) (permitting release of PSIs for use in related libel action against newspaper); cf. *United States v. Huckaby*, 43 F.3d at 139 (not abuse of discretion where district court sua sponte publicly disclosed PSI to counter widespread perception that federal prosecution of state judge was racially motivated). But see *United States v. Charmer Indus.*, 711 F.2d 1164, 1178 (2d Cir. 1983) (district court erred in approving release of PSI to state attorney general for use in license-revocation proceeding).

In the criminal context, courts have faced the delicate task of preserving confidentiality of PSIs while protecting defendants' rights to obtain exculpatory or impeaching information. Thus, courts have been sympathetic to requests for PSIs prepared about government witnesses, but unwilling to release the documents outright. Instead, upon receiving such a request, courts have typically examined the PSI in camera to determine whether any of the information is exculpatory or impeaching and should be disclosed. See *Trevino*, 89 F.3d at 190, 192; *United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991); *United States v. Anderson*, 724 F.2d 596, 598 (7th Cir. 1984); *United States v. Figurski*, 545 F.2d 389, 391-92 (4th Cir. 1976). A dissatisfied defendant is not entitled to examine the entire report, but on appeal may challenge the court's ruling, which is reviewed for abuse of discretion. See, e.g., *Moore*, 949 F.2d at 72 (reviewing district court's order for abuse of discretion).

■ Although in Vermont PSIs are deemed privileged[2] by statute, see 28 V.S.A. § 204(d), we agree with these courts that, in some narrow circumstances, the confidentiality of PSIs must yield to a defendant's due process rights.[3] See *Trevino*, 89 F.3d at 190 (in criminal context, PSIs represent special subcategory of potentially discoverable confidential information); *Figurski*, 545 F.2d at 391 (concern for rights of defendants and integrity of judicial process in some cases requires overriding confidentiality of PSIs); cf. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 58 (1987) (due process requires disclosure to defendant of any information material to defense that is in state's confidential investigative file concerning alleged child abuse); *In re F.E.F.*, 156 Vt. 503, 514-15, 594 A.2d 897, 904-05 (1991) (confidential SRS records relating to child abuse investigations are discoverable from prosecution pursuant to V.R.Cr.P. 16); *State v. Roy*, 151 Vt. 17, 35, 557 A.2d 884, 895 (1989) (leaving open possibility that, in proper case, defendant could have access to confidential internal investigation files of Department of Public Safety). We also agree that requiring in camera examination by the trial court of a requested PSI serves the dual goals of preserving the confidentiality of PSIs and disclosing information that is necessary to the defense of an accused. See *Ritchie*, 480 U.S. at 59-60 (defendant's right to discover exculpatory evidence does not include unsupervised authority to search through state's files; interests of both defendant and state can be protected by requiring submission of confidential records to trial court for in camera review). Such a procedure responds to the concerns expressed here by all involved, including defendant, the Department of Corrections, and amicus curiae Office of Defender General.

We therefore hold that where a defendant makes a sufficient showing that a PSI may contain information necessary to the defense,

---

[2] The Department of Corrections does not argue that 28 V.S.A. § 204(d) creates an evidentiary privilege. See *State v. Roy*, 151 Vt. 17, 32, 557 A.2d 884, 893 (1989) (statutory provision that deems "confidential" certain internal files of Department of Public Safety creates form of evidentiary privilege in court proceeding).

[3] Defendant does not argue that V.R.Cr.P. 16 requires the state's attorney to produce the PSIs at issue, presumably because the PSIs are in the possession of the Department of Corrections. Cf. *State v. Roy*, 151 Vt. at 34, 557 A.2d at 894-95 (where defendant sought access to records of Department of Public Safety, proper procedure was to attempt to subpoena records, rather than ask prosecution to produce file that it did not have and could not obtain). But cf. *In re F.E.F.*, 156 Vt. 503, 511-12, 594 A.2d 897, 903 (1991) (as SRS regularly provides information to state's attorney on alleged child abuse, and works closely with state's attorney in criminal and juvenile matters, SRS files are discoverable from prosecution pursuant to V.R.Cr.P. 16(c)).

the district court should review the PSI in camera. The standard for disclosure is the same as that discussed by the United States Supreme Court in *Ritchie*: the court should disclose information in the PSI if it is "both favorable to the accused and material to guilt or punishment." *Ritchie*, 480 U.S. at 57. Applying this standard, any exculpatory material must be disclosed, while disclosure of material tending to impeach a government witness must be disclosed "only when there is a reasonable likelihood of affecting the trier of the fact." *Figurski*, 545 F.2d at 391. The trial court's decision on disclosure will be disturbed on appeal only if it is clearly erroneous. *Trevino*, 89 F.3d at 190.

A remaining question is what showing a defendant must make to trigger in camera review of a PSI by the court. We recognize that, without seeing the document, defense counsel will be hard-pressed to show a compelling need for access to information in a PSI. Nor is a particularly high showing required to maintain confidentiality, as only the court reviews the PSI at this stage. See *id.* at 194 (Phillips, J., dissenting) (in camera review by court does not trigger concern for confidentiality). Nonetheless, a defendant seeking information from a PSI must establish some basis for the claim that the document contains material evidence. See *Ritchie*, 480 U.S. at 58 n.15 (defendant may not require trial court to search through confidential files without first establishing basis for claim that files contain material evidence). We conclude that a plausible showing of materiality is sufficient to support a request for in camera review of a PSI.[4]

## III.

Based on our holding, the court's order requiring disclosure of the PSIs must be vacated; at best, defendant is entitled to have the court review the PSIs in camera to determine whether some of the information should be disclosed. We must also consider, however, the Department of Corrections' argument that defendant has no right of access to the PSIs in his sentencing proceeding. We therefore

---

[4] We do not agree with the *Trevino* court that a defendant seeking information from a PSI must make a higher showing of materiality than required by *Ritchie*. See *United States v. Trevino*, 89 F.3d 187, 192 (4th Cir. 1996). We are not convinced that defense counsel would be able to "plainly articulate how the information contained in [the PSI] will be both material and favorable," *id.* at 192-93, without actually seeing the document.

evaluate the merits of defendant's specific request for Gundlah's PSI and the PSIs of other individuals sentenced to life-without-parole.[5]

As we have noted, most of the cases dealing with third-party requests for PSIs involve defendants seeking information about government witnesses for use at trial. We have found only two reported cases in which a defendant sought access to another individual's PSI for use at sentencing. The courts in both cases disposed of the issue summarily on the ground that PSIs are confidential reports not generally disclosed to third parties. See *United States v. Blanco,* 884 F.2d 1577, 1577-78 (3d Cir. 1989); *United States v. Martinello,* 556 F.2d 1215, 1216 (5th Cir. 1977).

Despite the lack of precedent, we cannot exclude the possibility that a defendant could make a plausible showing that information in another individual's PSI would be material to sentencing. See *Ritchie,* 480 U.S. at 57 (government has obligation to turn over evidence in its possession that is both favorable to accused and material to guilt or punishment). For example, a defendant might seek review of an accomplice's PSI to support an argument that the accomplice was more responsible for the offense. Or another individual's PSI might reveal inaccuracies within a defendant's own PSI.

In this case, however, defendant has made no such showing. Defendant does not claim that the requested PSIs contain information concerning his culpability or the aggravating and mitigating factors that are relevant to sentencing. See 13 V.S.A. § 2303(d), (e). Defendant seeks only to compare himself with other individuals who have been sentenced to life-without-parole.[6] Even if we assume that the PSIs would show that these other individuals were more culpable and dangerous than defendant, that information would not be mate-

---

[5] Now that we have established a procedure for handling requests such as these, we expect that this type of review will be atypical. In general, the decision whether to grant or deny a request for review of a PSI is committed to the sound discretion of the trial court, and will not be reversed absent a showing that the court abused or withheld its discretion. See *United States v. Trevino,* 89 F.3d at 193.

[6] Much of the information that defense counsel seeks should be available through other sources. As sentencing proceedings and documents filed by the parties in connection with those proceedings are generally public, see *State v. Densmore,* 160 Vt. 131, 136, 624 A.2d 1138, 1141 (1993), counsel should be able to review the arguments made by the parties in the other proceedings. See 13 V.S.A. § 2303(c) (before sentencing defendant for first- or second-degree murder, court shall allow parties to present arguments concerning aggravating and mitigating factors and sentence recommendations). In addition, sentencing courts in such cases are required to make written findings summarizing the offense and the defendant's participation in it, as well as specific findings concerning aggravating and mitigating factors. *Id.*

rial to defendant's sentence. Sentencing in Vermont is individualized, with broad discretion afforded the trial court in fashioning an appropriate sentence. See, e.g., *State v. Bushey*, 147 Vt. 140, 148, 513 A.2d 1177, 1182 (1986); *State v. Neale*, 145 Vt. 423, 435, 491 A.2d 1025, 1033 (1985). The sentencing process may involve a wide-ranging inquiry into a defendant's life, background, family relations, financial status, and the nature of the offense committed. See V.R.Cr.P. 32(c) (sentencing information); *In re Morrill*, 129 Vt. 460, 465, 282 A.2d 811, 815 (1971) (knowledge of defendant's life, background, family, past conduct, record, and inclinations is only proper basis for determination of sentence). The focus is properly on the defendant and the offense committed, not on the characteristics and behavior of unrelated offenders.

■ We do not agree with defendant that concerns for proportionality support his request for other individuals' PSIs. Both the federal and state constitutions require that punishments be proportioned to offenses. U.S. Const. amend. VIII; Vt. Const. ch. II, § 39; *Solem v. Helm*, 463 U.S. 277, 284 (1983); *State v. Venman*, 151 Vt. 561, 572, 564 A.2d 574, 581 (1989).[7] A penalty does not violate this constitutional requirement, however, unless it is "'clearly out of all just proportion

---

[7] We recognize that the United States Supreme Court's fractured decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991), casts doubt on the continuing validity of *Solem v. Helm*, 463 U.S. 277, 284 (1983). Two of the justices concurring in the judgment in *Harmelin* argued that *Solem* was decided incorrectly, and concluded that the Eighth Amendment contains no proportionality guarantee. *Harmelin*, 501 U.S. at 965 (Scalia, J., concurring in judgment, joined by Rehnquist, C.J.). Three of the justices concurring in the judgment appeared to narrow the *Solem* analysis, emphasizing that the overriding consideration in proportionality claims is the comparison of the crime committed and the sentence imposed. *Id.* at 1005 (plurality opinion). According to the plurality, only where this threshold comparison "leads to an inference of gross disproportionality" should a court engage in interjurisdictional and intrajurisdictional comparisons. *Id.* For several reasons, for purposes of this opinion we adhere to the analysis set out in *Solem* and adopted by this Court in *State v. Venman*, 151 Vt. 561, 572, 564 A.2d 574, 581 (1989). First, even if we assume that the *Harmelin* plurality opinion is controlling federal precedent, the result in this case does not change. Comparing the crime committed by defendant, felony-murder, to the harshest possible sentence of life-without-parole, does not lead to an inference of gross disproportionality. Defendant thus has no claim under *Harmelin* that a sentence of life-without-parole would violate his Eighth Amendment rights. Second, in *Venman* we adopted the *Solem* factors for purposes of analysis under the Vermont Constitution. *Id.* We have not reconsidered that holding in light of *Harmelin*, so our decision in *Venman* continues to control any claim by defendant under the Vermont Constitution. Finally, *Solem* has not been explicitly overruled. The Supreme Court recently reaffirmed that other courts should leave to the high Court "'the prerogative of overruling its own decisions.'" *Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)). The Court

to the offense.'" *Venman*, 151 Vt. at 572, 564 A.2d at 581 (quoting *State v. Constantino*, 76 Vt. 192, 196, 56 A. 1101, 1101 (1904)). Given the seriousness of the offense for which defendant was convicted, no sentence of imprisonment could be disproportionate. See *Solem*, 463 U.S. at 290 n.15 (no sentence of imprisonment disproportionate for crime of felony murder); cf. *Harmelin v. Michigan*, 501 U.S. 957, 1004 (1991) (plurality opinion) (mandatory sentence of life imprisonment without possibility of parole not disproportionate to offense of possession of over 650 grams of cocaine). Regardless of the results of a comparison with other offenders, defendant would have no grounds for a proportionality claim.

Our decision in *Venman* does not suggest otherwise. In *Venman*, we held that a potential ten-year sentence was not disproportionate to the offense of Medicaid fraud. For purposes of both the federal and state constitutional claims, we considered the three relevant criteria outlined by the United States Supreme Court in *Solem*: "'(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other [similarly situated] criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.'" *Venman*, 151 Vt. at 572, 564 A.2d at 581 (quoting *Solem*, 463 U.S. at 292).

■ The second of these criteria, which looks to sentences imposed on other criminals in the same jurisdiction, properly refers to sentences authorized for other crimes, not the actual sentences imposed on other defendants convicted of the same crime. See *Solem*, 463 U.S. at 291 (signal that punishment might be excessive is that more serious crimes are subject to same or lesser penalty); cf. *State v. Saari*, 152 Vt. 510, 515-16, 568 A.2d 344, 348 (1989) (mandatory minimum sentences for driving with license suspended and simple assault on police officer not disproportionate, although other more heinous crimes have no required jail sentence). The *Solem* Court held that a life sentence without possibility of parole was disproportionate punishment for a seventh nonviolent felony; in so holding, the Court exhaustively reviewed the other crimes for which the state of South Dakota authorized life sentences. *Solem*, 463 U.S. at 298-99. The Court noted that the defendant had been treated similarly or more severely than other criminals convicted of far more serious crimes. *Id.* at 299. As defendant cannot make such a claim, whatever sentence is

---

emphasized that other courts should not conclude that its more recent cases overrule by implication earlier precedent. *Id.*

imposed, he cannot support his request for the PSIs on these grounds.

In fact, the United States Supreme Court has squarely rejected the type of argument defendant seeks to make. In *Pulley v. Harris*, 465 U.S. 37 (1984), the petitioner argued that the sentence of death imposed on him was disproportionate to the punishment imposed on others for the same crime. The Court held that the Eighth Amendment does not require this type of comparative proportionality review of death sentences. *Id.* at 50-51. The Court noted that proportionality review traditionally refers to "an abstract evaluation of the appropriateness of a sentence for a particular crime," not to a comparison with punishment imposed on others for the same crime. *Id.* at 42-43.

The United States Supreme Court's holding in *Pulley* does not close the door on defendant's comparative proportionality argument, as this Court is free to reach a different result under the Vermont Constitution. We considered such a claim in *State v. Dove*, 163 Vt. 429, 658 A.2d 936 (1995), where the defendant had received an eight-to-fifteen-year sentence for careless and negligent driving with serious injury resulting. He argued that his sentence was disproportionate to the sentences typically imposed on other individuals convicted of the same offense or the more serious offense of careless and negligent driving with death resulting. We rejected his statistical evidence on this point, noting that the sample was "too small and fail[ed] to take into account enough variables to compare sentences imposed for the two crimes, let alone to interpret our constitution." *Id.* at 432, 658 A.2d at 938-39.

■ This is not the proper case in which to decide the full reach of our proportionality clause, § 39 of Chapter II. Whether or not this Court would recognize some right to comparative proportionality in sentencing, however, we see no basis for defendant's request for the PSIs of three unrelated individuals who happened to be sentenced to life-without-parole. In light of the seriousness of defendant's offense and the small number of comparable offenders, defendant's proposed comparison would prove little. See *id.* (sample of twenty-one other offenders too small for comparison). In any event, the information that defendant would need to make such a comparison is a matter of public record. Where a defendant is convicted of first- or second-degree murder, the sentencing court must make specific findings summarizing the offense and the defendant's participation in it, and must also make specific findings concerning aggravating and mitigating factors. 13 V.S.A. § 2303(c).

■ Defendant also requests access to the PSI of his accomplice, Charles Gundlah. As a general matter, there is a much stronger basis for a request for in camera review of the PSI of an accomplice. Defense counsel may have good reason to believe that an accomplice's PSI contains information about a defendant, such as information about motives or relative responsibility for the crime. We conclude that the court should review Gundlah's PSI in camera and disclose any information material to defendant's sentence.

*Order requiring Department of Corrections to distribute the PSIs requested by defendant is vacated; on remand, court shall obtain and review Charles Gundlah's PSI in camera and disclose any information material to defendant's sentence.*