2014 VT 6

### In re Norman W. Stevens

[90 A.3d 910]

No. 13-116

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Zonay, Supr. J., Specially Assigned**

Opinion Filed January 17, 2014

*Matthew Valerio*, Defender General, and *Kelly Green*, Prisoners' Rights Office, Montpelier, for Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Reiber, C.J.** Petitioner appeals from the Chittenden Civil Division's decision granting the State's motion for summary judgment on his petition for post-conviction relief (PCR). On appeal, petitioner argues that the trial court erred in determining that his sentence of life without parole for attempted murder does not violate the Eighth Amendment's prohibition on cruel and unusual punishment. We affirm the trial court's grant of summary judgment.

¶ 2. The facts of petitioner's underlying conviction are not in dispute, and were previously summarized by this Court as follows:

> Prior to August 13, 1999, defendant had been romantically involved with Amy Cruickshank. On August 13, Cruickshank obtained a temporary relief from abuse order, which was served on defendant that afternoon. In the early hours of August 14, defendant broke into the motel room where Cruickshank was residing and where she was asleep with her boyfriend, Christopher Massey. Defendant attacked Cruickshank and Massey with a hammer, injuring

both of them and driving Massey from the room. Defendant dragged Cruickshank by the hair out of the room and toward his van parked outside. Defendant had equipped the van with ropes on the front passenger seat in order to restrain Cruickshank, as well as with gasoline and flares with which defendant intended to set the vehicle on fire. As defendant dragged Cruickshank towards the van, he was apprehended by several neighbors, who restrained him until the police arrived. Defendant voluntarily admitted to the police that he had assaulted the victims and further indicated that he had intended to go down the road and set the vehicle on fire with Cruickshank inside.

*State v. Stevens*, 2003 VT 15, ¶ 2, 175 Vt. 503, 825 A.2d 8 (mem.). A jury convicted petitioner of attempted first-degree murder, two counts of aggravated assault, kidnapping, burglary, and violating an abuse prevention order.

¶ 3. At the sentencing hearing, the trial court considered a variety of factors, including petitioner's history of mental health issues and the abuse he had suffered as a child. The court also heard evidence of the trauma inflicted on petitioner's family members after petitioner shot at his former wife and children multiple times in response to the news that his wife wanted to end the marriage. Ultimately, the court sentenced petitioner to life without parole, explaining that it "fe[lt] strongly that [petitioner] should not be given the opportunity to hurt anyone ever again." In a sentencing statement, the court explained that it had based its decision primarily upon "two aggravating factors [which] outweigh[ed] all other considerations":

First, the Defendant had a well-developed plan to kill Ms. Cruickshank in a particularly cruel and painful manner. It is clear that he did not want simply to kill her; he wanted her to feel terror and pain and to suffer as he did so. Were it not for the intervention of some very brave friends and neighbors, he might well have succeeded. Second, this is not the Defendant's first attempt to kill. In 1977, he tried to shoot his wife and at least two of his children. In that case it was only through blind luck that he did not succeed.

Petitioner's convictions and sentence were upheld on direct review. *Stevens*, 2003 VT 15, ¶¶ 5-7, 10.

¶ 4. "Summary judgment is appropriate when there are no genuine issues of material fact and, when viewing the evidence in a light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *In re Carter*, 2004 VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281. We review a trial court's decision to grant summary judgment using the same standard as the trial court. *Sabia v. Neville*, 165 Vt. 515, 523, 687 A.2d 469, 474 (1996).

¶ 5. ■ Petitioner argues that his sentence of life without parole for attempted murder violates the Eighth Amendment's prohibition on cruel and unusual punishment. "A punishment will run afoul of the Eighth Amendment if it is 'grossly disproportionate' to the offense for which it is imposed." *State v. Venman*, 151 Vt. 561, 571, 564 A.2d 574, 581 (1989) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). A penalty does not violate the Eighth Amendment unless it is "clearly out of all just proportion to the offense." *Id.* at 572, 564 A.2d at 581 (quotation omitted).

¶ 6. ■ In *Venman*, we adopted the U.S. Supreme Court's three-part test created in *Solem* for determining whether a punishment violates the Eighth Amendment on proportionality grounds:

> "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other [similarly situated] criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

*Id.* (quoting *Solem*, 463 U.S. at 292).

¶ 7. Since we decided *Venman*, the U.S. Supreme Court clarified the *Solem* test by instructing that only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" should the court consider the second and third *Solem* factors — the intrajurisdictional and interjurisdictional comparisons. *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring). "The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime." *Id.* Although the controlling opinion in

*Harmelin* was written by only three justices, in later cases the Court confirmed the validity of *Harmelin*'s threshold analysis. See *Graham v. Florida*, 560 U.S. 48, 59-60 (2010) (explaining the "narrow proportionality principle" and the threshold comparison approach dictated by *Harmelin*); *Ewing v. California*, 538 U.S. 11, 23-24 (2003) ("The proportionality principles in our cases distilled in Justice Kennedy's concurrence [in *Harmelin*] guide our application of the Eighth Amendment.").[1] Therefore, we use the *Harmelin* threshold test to guide our Eighth Amendment analysis.[2]

¶ 8. ▮▮ Accordingly, we consider the gravity of the offense and the harshness of the penalty. *Solem*, 463 U.S. at 290-91. As to the gravity of the offense, petitioner was convicted of attempting to murder his ex-girlfriend by attacking her and her boyfriend with a hammer and dragging her out to his van with the plan of setting it on fire with her inside, thereby burning her to death. As the trial court noted, petitioner had a "well-developed plan" to kill the victim "in a particularly cruel and painful manner." Moreover, the court heard evidence that petitioner had previously shot at his family members; it was sheer luck that they escaped death. Given these heinous circumstances, the trial court's sentence of life without parole — the highest possible sentence under Vermont

---

[1] In *State v. Bacon*, we rejected the *Harmelin* approach for several reasons, including the fact that *Solem* had not been "explicitly overruled" by *Harmelin*. 167 Vt. 88, 96 n.7, 702 A.2d 116, 122 n.7 (1997). Since *Bacon* was decided, however, the U.S. Supreme Court has endorsed the *Harmelin* analysis in several cases, as explained above. Although *Solem* has not been overruled per se, its holding has clearly been modified. Accordingly, we are bound to adopt the Supreme Court's methodology in our Eighth Amendment analysis.

[2] *Harmelin* does not necessarily control a claim arising under the Vermont Constitution. We have explicitly left open the question of whether the Vermont Constitution's proportionality clause, ch. II, § 39, is more protective than the Eighth Amendment. See *Bacon*, 167 Vt. at 96 n.7, 702 A.2d at 122 n.7 (stating that regardless of *Harmelin*'s holding, in *Venman*, 151 Vt. at 572, 564 A.2d at 581, this Court adopted the *Solem* factors for analysis under the Vermont Constitution, and thus *Solem*, 463 U.S. at 292, continues to control claims arising under the Vermont Constitution unless and until this Court reconsiders *Venman*); *id.* at 96-98, 702 A.2d at 122 (reserving the question of whether a comparative proportionality claim could arise under the Vermont Constitution even though the U.S. Supreme Court had squarely rejected such a claim, stating that "[t]his is not the proper case to decide the full reach of our proportionality clause"). Because petitioner here did not raise a claim under the Vermont Constitution, we do not decide these questions.

law — was undoubtedly harsh, but not "clearly out of all just proportion to the offense." *Venman*, 151 Vt. at 572, 564 A.2d at 581 (quotation omitted).

¶ 9. ▮ Petitioner argues that the fact that the victims ultimately experienced little physical harm weighs in favor of a finding of disproportionality.[3] The harm ultimately caused to the victim may, generally speaking, be a legitimate factor in judging the gravity of an offense. See *Solem*, 463 U.S. at 293 (recognizing that "[t]he absolute magnitude of the crime may be relevant" in judging proportionality). Lack of harm is a less compelling consideration, however, where the perpetrator intends to cause grave harm but fails solely due to external factors beyond his or her control. *State v. Alexander*, 2005 VT 25, ¶ 9, 178 Vt. 482, 871 A.2d 972 (mem.) ("[D]efendant is asking to have a lesser penalty imposed because he was unsuccessful in committing a crime he clearly intended. We cannot say that sentencing this attempt crime in the same manner as the completed crime, as the Legislature has decreed, is constitutionally disproportionate."). In the present case, petitioner freely admitted that he intended to kill the victim, and that he was only thwarted because several neighbors intervened. His culpability is not diminished by the fact that he failed to consummate the intended killing.

¶ 10. ▮ This understanding of proportionality in attempt cases — that defendants may not be entitled to a lesser sentence simply because they failed to consummate the crime — is not new to Vermont law. It comports with the intent of the Legislature, which provided that attempted murder should be punished in the same manner as if the crime was completed. 13 V.S.A. § 9(a) ("If the offense attempted to be committed is murder . . . a person shall be punished as the offense attempted to be committed is by law punishable."). Moreover, this Court recognized the same principle in *Alexander*, an attempted kidnapping case. 2005 VT 25, ¶ 9 (concluding that sentence for unsuccessful kidnapping attempt was not grossly disproportionate where it was equal to sentence for completed crime, as decreed by statute).

---

[3] Petitioner also points to his emotional distress over the dissolution of his romantic relationship as a mitigating factor. The trial court considered this factor and found it without merit, and the trial court's rejection of the claim was within its discretion.

¶ 11. We conclude that petitioner does not meet the "threshold" inquiry comparing the gravity of the offense and the harshness of the penalty. Because "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, we do not reach the second and third *Solem* factors.

*Affirmed.*