2013 VT 22

# State of Vermont v. Shane Casey

[71 A.3d 1227]

No. 11-205

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed March 15, 2013

430

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals his conviction of two counts of aggravated sexual assault, alleging that the trial court erred in (1) denying defendant's motion to sever a joint trial; (2) refusing to grant a new trial after codefendant pled no contest midtrial; and (3) admitting the victim's diary as evidence of her sexual abuse. We affirm.

¶ 2. This case has a long and winding history. The State prosecuted defendant and codefendant, Stacey Parnitzke, with whom defendant was romantically involved, for multiple counts of aggravated sexual assault. The charged incidents occurred between 2005 and 2006. There have been three jury trials, presided over by two judges. Separate counsel represented defendant and

Parnitzke, but the court joined their cases for discovery, pretrial motions, and all three trials.

¶ 3. The first trial in June 2009 resulted in a hung jury. The second trial in April 2010 led to convictions against both defendants, but due to the improper admission of evidence, the trial court vacated the convictions and granted a new trial. The third trial commenced on January 31, 2011. After three days of trial, on February 2, 2011, Parnitzke pleaded no contest to a reduced charge of sexual assault on a minor, which ended her participation in the case. The third trial drew to a close on February 9, 2011. Defendant was convicted of two counts of aggravated sexual assault. Defendant filed a timely motion for a new trial, which was denied. This appeal followed.

¶ 4. Defendant first claims that he requested severance before the third trial and asserts that the court impermissibly denied his motion to sever, arguing that there was a "reasonable likelihood of prejudice" that could not be eliminated. Defendant and Parntizke were charged in separate informations. Before the first trial, the State moved to join the cases pursuant to Vermont Rules of Criminal Procedure 8(b)(3)(A), 8(b)(3)(B), and 13(a), contending defendants were charged with offenses that were "closely connected" and part of a "common scheme or plan." Both defendant and Partnitzke objected to the State's motion for joinder. Nonetheless, the court granted the State's motion under Rule 13(a), which authorizes the court to join cases for trial even though they were filed separately.

¶ 5. Rule 13(a) gives the court broad discretion to order joint trials where cases could be joined for pleading under Rule 8. See Reporter's Notes, V.R.Cr.P. 13(a). Rule 8 authorizes the joinder of defendants when "it is alleged that the several offenses charged (A) were part of a common scheme or plan; or (B) were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof of one charge from proof of others." V.R.Cr.P. 8(b)(3)(A)-(B). The trial court reasoned that because there were allegations of simultaneous sexual assault, whereby both defendants were allegedly abusing the victim at the same time, such acts would constitute a common plan or scheme under Rule 8(b)(3)(A). Similarly, the court found that because the charged offenses all occurred between the same time frame and in the same place, the allegations were "closely connected" under Rule 8(b)(3)(B). Further, the court concluded that there was "no

reasonable likelihood that [the] defendant[s] would be prejudiced by a joint trial," finding that the evidence involved was not so complicated that the jury would have difficulty understanding the allegations made as to each defendant. See V.R.Cr.P. 14(b)(2)(D)-(E). Specifically addressing severance with respect to defendant, the court stated:

> The State has given notice of its intent to introduce other uncharged acts under V.R.E. 404(b) against each defendant. Defendant-Casey argues that the jury will be required to distinguish between acts involving other men and Defendant-Parnitzke and those acts involving these two defendants. Defendant-Casey also argues that the jury will be required to "examine frank and shocking allegations of sexual abuse of a child . . . and to examine equally shocking allegations of incest" against Defendant-Parnitzke. Distinguishing the sexual acts between participants and the type of sexual act is not so complicated that a jury could not distinguish the evidence and apply the law intelligently. The jury will be required to examine shocking allegations of sexual abuse and incest. This is not a ground for severance. The "shock value" does not prevent a jury from applying the law intelligently.

¶ 6. Furthermore, the court explained that the uncharged acts, complained of by defendant, had a "limited purpose," and the jury would be instructed that they could not be used substantively against either defendant or Parnitzke. The court also observed that defendant and Parnitzke's underlying relationship would remain pertinent to both cases and be disclosed at trial, regardless of whether their cases were severed. Before the jury draw of the first trial, defendant twice renewed his objections to joinder, but the court reaffirmed its denial. As noted, the first trial ended in a hung jury.

¶ 7. Before the second trial, the State moved for joinder. Parnitzke filed a renewed motion to sever. Defendant did not move to sever and expressly declined to join Parnitzke's motion for severance but indicated he may want to renew such motion at a later time. The court granted joinder, citing reasons articulated in its earlier decision to join the cases. The second trial resulted in convictions of both defendants; however, as noted above, a new trial was granted due to the admission of improper evidence.

¶ 8. On the first day of jury draw for the third trial, counsel for Parnitzke renewed the request for a separate trial, acknowledging that her request had been consistently rejected but wanting to preserve the issue despite the court's ruling that it would be a joint trial.

> Again, my client wishes an individual trial, not a joint trial. We've asked for that repeatedly. The Court we understand has denied that, and we're going forward as a joint trial. But don't want to not preserve the issue and bring it up before this trial.

Defendant's counsel then chimed in, "The same here, Judge, on that issue." The court continued to deny the motion to sever, and the trial resulted in convictions of two counts of aggravated sexual assault against defendant.

¶ 9. Following his trial, defendant filed a motion for a new trial based on, among other things, the court's decision not to sever trials. The court reasoned that defendant did not adequately petition the court for severance, stating that:

> Defense counsel's comment, in the absence of a motion to that effect, is inadequate to preserve the issue. [Defendant's] position on severance was made known to the Court on August 25, 2009, and after that date, he never filed a written motion to sever defendants. A motion to sever defendants must be made by a proper pre-trial motion or it is waived.

¶ 10. Rule 14 provides that "the court shall grant severance of the moving defendant unless the court finds that there is no reasonable likelihood that that defendant would be prejudiced by a joint trial." V.R.Cr.P. 14(b)(2)(D). In order to adequately move for severance, defendant must file a motion before trial, and if overruled, defendant must renew the motion on the same grounds, before or at the close of all evidence. "Severance is waived if the motion is not made at the appropriate time." See V.R.Cr.P. 14(b)(4)(A). The onus is on defendant to specify to the court the reasons he opposes joinder and to show why there is a reasonable likelihood that he would be prejudiced by a joint trial. See V.R.Cr.P. 14. Here, because defendant previously considered and rejected severance of defendants before the second trial, the court could reasonably assume that a joint trial was part of his strategy.

■ ■ ¶ 11. Defendant's vague attempt to preserve the issue for review fails. Counsel's statement was cryptic and scant, and sought no action from the court as required by the rule. See *State v. Venman*, 151 Vt. 561, 567, 564 A.2d 574, 578-79 (1989) (In severance-of-offenses cases, the burden is placed "upon the defendant" to request and "renew the motion" for severance, which permits "the defendant to reevaluate" whether to proceed with a consolidated trial. "Therefore, failure to renew the motion constitutes a waiver of any right to severance."). Merely stating, "[S]ame here, Judge" does not constitute a motion to sever.

¶ 12. Further, considering defendant's shifting position — requesting to sever in the first trial and not objecting to joinder in the second — it is unclear what the "same here" references. Such a nebulous request does not preserve the issue for review.[1] Without a proper motion, the court should not have been expected to divine a change in defendant's position. Defendant failed to clearly request severance or note the prejudice to him and, therefore, waived his right. See V.R.Cr.P. 14(b)(4). As a result, we do not reach the merits of whether the trial court improperly joined the cases.

¶ 13. Defendant next contends that the trial court erred in denying his motion for mistrial after codefendant's sudden absence from trial. On the third day of trial, during the lunch recess, Parnitzke reached an agreement with the State and pleaded no contest to a lesser charge. When the jury returned, the judge advised them that some issues had arisen and trial would not resume for two days. In the interim, defendant moved for a mistrial and a new trial arguing: (1) the jury would consider irrelevant and highly prejudicial information about Parnitzke that would not have been admitted had defendant been tried alone; (2) Parnitzke's change of plea resulted in a major shift in defense strategy; (3) the jurors would draw impermissible conclusions from Parnitzke's absence; and (4) cautionary instructions alone would not protect defendant's fair trial rights.

¶ 14. The court denied the motion, concluding Parnitzke's removal from the trial did not warrant the extreme response of a mistrial. When the jury returned, two days later, Parnitzke was

---

[1] We are not advocating form over substance. See generally, *Venman*, 151 Vt. at 565, 564 A.2d at 577 (defendant preserved request to sever even though he referred to it as sequestration). But where, as here, defendant provides no express request to sever or reason why the court should sever trials, we cannot craft one.

absent. The judge explained that the cases had been "separated." Without going into details, the judge stated that there are "several legal reasons why this could have occurred" and the jury was "not to speculate about these possible reasons."

¶ 15. Denial of a mistrial under circumstances such as those presented here is reviewed for abuse of discretion only. See *United States v. Merida*, 765 F.2d 1205, 1220-21 (5th Cir. 1985). And, "[g]iven the trial judge's closeness to the scene," denials of mistrials after a codefendant pleads midtrial are reversed "only under extremely compelling circumstances." *United States v. Butterworth*, 511 F.3d 71, 76 (1st Cir. 2007) (quotation omitted). This Court uses the same standards. *State v. Messier*, 2005 VT 98, ¶ 15, 178 Vt. 412, 885 A.2d 1193 ("The disposition of a motion for mistrial is discretionary, and, as such, a claim of error can be supported only where the trial court's discretion was either totally withheld, or exercised on clearly untenable or unreasonable grounds."). "The exercise of that discretion always must be informed by the circumstances of the particular case." *United States v. Sepulveda*, 15 F.3d 1161, 1184 (1st Cir. 1993). Based on the trial judge's superior vantage point, we will not interfere with the disposition of such a motion unless the complaining party can demonstrate a manifest abuse of that discretion. See *United States v. Pierro*, 32 F.3d 611, 617 (1st Cir. 1994), *overruled on other grounds by United States v. Booker*, 543 U.S. 220 (2005).

¶ 16. The "standard method" for handling a midtrial plea change in a multi-defendant criminal prosecution "is to (a) refrain from telling the jury of the change of plea, and (b) instruct the jury that the absent defendant has been withdrawn from the case for legally sufficient reasons and that the jury (i) should not speculate on why the absent defendant is no longer in the case and (ii) should focus single-mindedly on whether the government has established, beyond a reasonable doubt, the guilt of the defendant or defendants remaining in the case, bearing in mind that in order to achieve a conviction of a defendant the government must carry its burden of proof individually as to that defendant." See *United States v. Rodriguez*, 205 F. Supp. 2d 411, 412-13 (E.D. Pa. 2002). "Declaring a mistrial is a last resort, only to be implemented if the taint is ineradicable"; that is, where curative instructions cannot realistically mend the harm done by the midtrial plea. *Sepulveda*, 15 F.3d at 1184; see *Pierro*, 32 F.3d at 617.

¶ 17. The majority of the cases cited by defendant have arisen in the particular context of conspiracy, where "[a] guilty plea entered by a codefendant can be especially prejudicial." *United States v. Peterman*, 841 F.2d 1474, 1480 (10th Cir. 1988) (quotation omitted). No conspiracy was charged in the case at hand. Here, the overlap of offenses charged against each defendant is not such that any inkling of Parnitzke's guilt would automatically lead a jury to conclude defendant's guilt, as it is well settled that "the guilty plea of one defendant cannot serve as substantive evidence against another defendant." *Rodriguez*, 205 F. Supp. 2d at 414; see *United States v. Baez*, 703 F.2d 453, 455-56 (10th Cir. 1983) (trial court's reference to codefendants' guilty plea for conspiracy to distribute PCP was plain error). This rule protects defendants from a jury's temptation "to conclude that if one defendant is guilty of committing an offense, the other defendant is guilty as well." *Peterman*, 841 F.2d at 1480 (challenging admission of coconspirators prior convictions); see *United States v. Miranda*, 593 F.2d 590, 594 (5th Cir. 1979) ("[A] defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been convicted of the same charge."); *Babb v. United States*, 218 F.2d 538, 542 (5th Cir. 1955). " 'A guilty plea entered by a codefendant can be especially prejudicial if the plea is made in connection with a conspiracy to which the remaining defendants are charged.' " *Peterman*, 841 F.2d at 1480 (quoting *United States v. DeLucca*, 630 F.2d 294, 298 (5th Cir. 1980)). "Due to the extreme and unfair prejudice suffered by defendants in [coconspirator] situations, courts and prosecutors generally are forbidden from mentioning that a codefendant has either pled guilty or been convicted." *United States v. Griffin*, 778 F.2d 707, 710 (11th Cir. 1985) (finding that trial court abused its discretion in allowing coconspirators' adjudication of guilt to be admitted into evidence).

¶ 18. Defendant asserts that some or all of the jurors must have speculated, regardless of the instructions to the contrary, that Parnitzke pleaded guilty after the victim's devastating testimony that her mother had allowed many men to assault her while they were living in England, and that guilt of the absent Parnitzke directly inculpated defendant. It is fair to say that a significant portion of the victim's testimony detailed accounts of Parnitzke's long history of abuse of her daughter, leaving defendant just

another man Parnitzke permitted to assault her child. Defendant analogizes his case to *Rodriguez*, a capital murder case where three defendants were tried together for murders. 205 F. Supp. 2d 411. The two accused of actually carrying out the murders entered into a plea agreement after six weeks of trial, leaving only the defendant, who stood accused of hiring the first two to commit the crimes. The judge in *Rodriguez* granted defendant's motion for a mistrial, positing that at least some members of the jury, over the course of the several weeks the trial was expected to last, would at some point surmise that "changes of plea constituted not merely a possible, but perhaps the most probable, explanation for the departure from the case" of the two other defendants. *Id.* at 413. Also, the prosecution's presentation of the murder charges against the two pleading defendants was keyed into the theory that the defendant orchestrated the murders and hired the two defendants. In other words, the guilt of the two absent defendants was directly linked to the guilt of the defendant Rodriguez. *Id.*

¶ 19. We find the facts of the present case distinguishable. The two cases here were joined based on a common plan or scheme and because the offenses charged were closely connected in time, place and occasion; yet, the behaviors constituting the charges against each were distinct, as was the evidence presented.[2] Moreover, unlike the situation presented in *Rodriguez*, the potential for a prejudicial inference in this case was not wholly obvious. The court appropriately instructed the jury not to speculate as to why the case against Parnitzke had been separated from defendant's. The court further told the jury not to draw any conclusions from Parnitzke's absence. The court's explanation falls directly in line with established procedures. See *Butterworth*, 511 F.3d at 76; *Sepulveda*, 15 F.3d at 1184-85. While defendant suggests that more evidence of abuse came in as a result of being tried jointly with Parnitzke, he fails to appreciate that the evidence to which he refers was offered solely against Parnitzke. He fails to support his claim that he was prejudiced by Parnitzke's midtrial absence or to show how the jury could have wrongly inferred his guilt from codefendant's absence. We affirm the lower court's decision to deny the mistrial.

---

[2] The victim did describe one instance where Partnizke was performing oral sex on the victim while the victim performed oral sex on defendant. Though allegedly simultaneous, defendant's culpability did not require a corresponding reliance on Partnizke's guilt and vice versa. The victim's credibility as to one could be assessed differently as to the other.

¶ 20. As a final matter, defendant asserts that evidence of the victim's diary was improperly admitted at trial. Discretionary rulings regarding the admissibility of evidence are reviewed under an abuse-of-discretion standard. *State v. Voorheis*, 2004 VT 10, ¶ 20, 176 Vt. 265, 844 A.2d 794. Prior to trial, defense counsel sought to exclude from evidence notations in the victim's diary which she claimed represented a record of the abuse, arguing that such evidence would constitute hearsay. The court ruled that the State would not be permitted to present the substance of the diary entries but agreed that the victim could testify to the fact that she kept the diary and wrote notes corresponding to the timing of the sexual abuse.

¶ 21. At trial, in response to the State's inquiry as to whether she ever informed anyone of, or documented the alleged abuse, the victim stated, "I didn't like write it, but I used like little symbols or drawings . . . in a diary" in order to protect the information from others. The defense then, on cross-examination, introduced the actual diary, apparently to highlight the fact that there were no verbal descriptions of abuse or tally marks, as the victim suggested during earlier interviews. The court noted that, in its closing, the defense argued persuasively that the victim's contradictory accounts undermined the value of the markings and the victim's credibility. Defendant now argues that diary symbols are hearsay and were impermissibly admitted under Vermont Rule of Evidence 801(d)(1)(B), as prior consistent statements. However, the court had ruled that the victim could testify only that she kept a diary, but not as to the substance of the diary. The court reasoned that if there was impeachment on cross-examination suggesting the victim's allegations were recently fabricated, the State could then offer evidence of what was recorded in the diary as a prior consistent statement. Because it was the defense that offered the diary, which the court noted was not strong evidence and was in fact a double-edged sword, and that used the diary to impeach the victim's credibility as well as to show the victim's bias towards defendant, we find no abuse in admitting the evidence.[3]

*Affirmed.*

---

[3] The State asserts that the defense failed to preserve the matter on appeal based on its failure to object to the court's ruling that the victim could testify to the mere fact of the existence of the diary, without going to its substance, but rather just responded, "Great" to the entire discussion. Because we find that defendant's claim of error fails, we decline to address the State's preservation issue.